**William N. STONE, Appellant,**

v.

**Robert H. FINCH, Secretary of Health, Education, and Welfare, Appellee.**

**No. 14311.**

United States Court of Appeals, Fourth Circuit.

Dec. 4, 1970.

James H. Coleman, Charleston, W. Va., (Coleman & Lantz, Charleston, W. Va., on the brief) for appellant.

W. Warren Upton, U.S.Atty., for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge:

William Stone appeals from the district court's order granting summary judgment affirming the denial of disability benefits by the Secretary of Health, Education, and Welfare.

Stone challenges the substantiality of the evidence to support the denial of benefits. He alleges that the hearing examiner ignored objective medical evidence which would have entitled him to disability benefits; that the examiner concluded that Stone's only complaints are of idleness and chest pains, brought

on by his unwillingness to work and smoking. Claimant further complains that the hearing examiner ignored, among other things, the heart disease, the pneumoconiosis, the tension anxiety state, the emphysema and the psychoneurosis. Upon review of the record we conclude that Stone has overstated his claims and understated the medical evidence in the record which provides substantial support for the findings of the hearing examiner and the Secretary's denial of benefits.

The examiner did not overlook the fact that Stone has some impairments. In fact, the examiner specifically found that claimant suffered from "anxiety tension neurosis with conversion symptoms, mild to moderate; pulmonary emphysema, mild; and pneumoconiosis, grade II." The examiner further found that as a result of these impairments claimant was precluded from engaging in any work to be performed in a dusty atmosphere. However, the examiner concluded that claimant was not precluded from engaging in any and all substantial forms of gainful activity, that he was capable of performing the many jobs suggested in the testimony of a vocational expert, that such jobs were not incompatible with claimant's physical and mental condition and his past working experience, and therefore that he was not disabled within the meaning of the law.

As to physical disabilities, the examiner specifically found that Stone suffered from mild pulmonary emphysema and grade II pneumoconiosis, contrary to Stone's assertions before us that the examiner "overlooked the fact the plaintiff has emphysema and occupational pneumoconiosis, cat. II." The examiner then further determined that Stone's afflictions were not so severe as to be disabling under the law. All but one of the physicians who diagnosed emphysema described it as mild to moderate, and the other physician used no adjective to categorize or describe the severity of the disease. All physicians who diagnosed pneumoconiosis classified it as category I–II, and those who found ventilatory impairment described it as moderate. Stone's total vital capacity, forced expiratory volume and maximum breathing capacity indicated to a medical consultant of the department (an internal medicine specialist) that Stone had the "residual functional capacity to engage in heavy work activity from the standpoint of ventilatory pulmonary function studies alone." Thus, there was clearly substantial medical evidence to support the examiner's finding that although Stone suffered from emphysema and pneumoconiosis, his impairments were not so severe as to be disabling. Stone makes much of the fact that the examiner strongly condemned Stone's smoking. While we agree that the examiner's comments about smoking were unnecessary and irrelevant to a determination of whether or not Stone was actually disabled and entitled to benefits we find no prejudice resulting to Stone since the record contains substantial evidence to support the examiner's finding that Stone's ailments did not constitute a disability.

Stone also claims that the examiner ignored evidence of heart disease. Only one of the several physicians who examined claimant found any indication of heart disease and this diagnosis was vigorously disputed by the department's consulting internal medicine specialist. Every other physician found no indication of heart disease and the psychiatrist who examined claimant reported that his chest pains "do not seem to me to be related to any type of heart trouble and may represent a conversion type of symptom." Electrocardiograms and Master's exercise tests consistently were normal, thereby negating the presence of heart disease. Clearly the examiner did not ignore Stone's claim of "heart disease" but simply determined that Stone was not disabled by any such disease. Substantial evidence in the record supports this determination.

Claimant further asserts that the examiner ignored evidence that he was mentally disabled by his sensation of

chest pains and his fear of a heart attack. Again, it is clear that the examiner did not ignore this aspect of Stone's claim but instead specifically found that Stone suffered from "anxiety tension neurosis with conversion symptoms, mild to moderate." However, based upon a psychiatric report, the examiner determined that Stone's "chief trouble is idleness, which renders him nervous, and which appears to be his worst enemy." The psychiatrist's report provides a sufficient basis for this determination by the examiner. The psychiatrist reported to the Vocational Rehabilitation Division that Stone said that nothing helped his chest pain except rest, that he had trouble sleeping, *that he "feels better if he has something to occupy himself,"* that he did light housework, and *that he had described "feelings of tension which occur mostly when he has nothing to do." Stone admitted to the psychiatrist that his pain was "not brought on by exertion or anything else of which he is aware."* The psychiatrist found "mild to moderate tension and chest symptoms, which appear to have a conversion basis," and his diagnosis was "psychoneurosis, mixed type, manifested by feeling of tension and conversion symptoms, mild to moderate."

The examiner correctly stated that mere existence of a psychoneurosis, in and of itself, does not constitute a disability, as he quoted a Social Security regulation which indicates that psychoneurosis does not constitute a disability unless it is such a condition as to be "incompatible with occupational activity." The examiner would have been incorrect had he stated that impaired mental condition could never support a finding of disability. Instead he found that Stone suffered with a mild to moderate anxiety tension neurosis with conversion symptoms, but that his mental condition was not disabling. The psychiatrist's report indicates, as the examiner concluded, that Stone's inactivity causes his anxiety, which causes his chest pain and which Stone claims, in turn, prevents him from working. In short, the exam-

iner concluded from the psychiatric report that Stone's mental problems stem from his inactivity, rather than that his working inactivity stems from his mental problems. Substantial evidence supports the examiner's determination that Stone's "chief trouble is idleness, which renders him nervous, and which appears to be his worst enemy."

We find substantial evidence in the record to support the examiner's determination that Stone is not mentally or physically disabled within the meaning of the law and the district court's approval of the Secretary's denial of disability benefits will not be disturbed.

Affirmed.

SOBELOFF, Circuit Judge (dissenting):

There was evidence before the Examiner from which he might readily have concluded that the claimant, Stone, was disabled and entitled to the benefits of the Act. There was other evidence from which he could and did conclude the opposite. Ordinarily, courts must uphold the Examiner's conclusion if it is supported by substantial evidence. 42 U.S.C.A. § 405(g). The underlying postulate is that the Examiner has weighed the evidence and made his judgment with an impartial mind.

The Examiner's own opinion, however, leaves me with the distinct feeling that he approached this claim with a jaundiced eye. He threw into the scales of judgment the fact that the claimant, a veteran of thirty-five years of work in coal mines, and quite understandably a sufferer from emphysema and silicosis, happened to be a cigarette smoker. He opined that this smoking habit

\* \* \* is a rather strange way to treat his alleged shortness of breath and silicosis, and consequently the undersigned feels that claimant is largely responsible for such discomfort as he actually does feel, and that *he ought not to be rewarded for nourishing a harmful habit.* (Emphasis added.)

The wisdom of the smoking habit generally, or in this instance, is not an issue, nor is it material that smoking may have contributed to or aggravated Stone's condition. The Hearing Examiner assumed a presumptuous role when he undertook to carry his crusading zeal against cigarette smoking into this case. If a juror on voir dire were to disclose such strong sentiments he would certainly be disqualified for cause.

There was no occasion to inject a moral judgment on smoking into the decisional process, or to talk of reward or punishment. My brethren agree that the quoted remarks were "unnecessary and irrelevant" but express the view (which is no more than a hope) that these comments were not prejudicial. It is no answer to say that there was evidence from which a finding could be made *against* the claimant; the really significant fact for the present purpose is that the evidence also permitted a conclusion *upholding* his claim. The choice lay with the Examiner, and the claimant was entitled to his unbiased decision. Since one cannot say with any degree of certainty that the bias voiced by the Hearing Examiner was not prejudicial, the appellant is entitled at the least to a hearing before an Examiner with a mind unclouded by "unnecessary and irrelevant" prepossessions.

This is not a situation in which the hearing examiner is accused of prejudice in the conduct of the proceedings and there is speculation as to what impact, if any, this had on his ultimate decision. See Bethlehem Steel Co. v. N. L. R. B., 74 App.D.C. 52, 120 F.2d 641, 653 (1941). Here the Examiner's explicit statement in the decision denying disability benefits demonstrates clear and unequivocal bias in the evaluation of the claim. What the Fifth Circuit said in Alabama Roofing & Metal Co. v. N.L.R. B., 331 F.2d 965, 967 (5th Cir. 1964), is apt here: "* * * petitioner, as a matter of due process, was entitled to a hearing before an impartial trial examiner."

I would reverse with instructions to remand to the Social Security Administration for a new hearing before another examiner.*

---

* I trust that it is not amiss to note that I am not a smoker and deplore the habit. Nevertheless I think that smokers too are entitled to justice.