James L. KETRON, Plaintiff,

v.

Robert FINCH, Secretary of Health, Education and Welfare (now Elliot L. Richardson), Defendant.

Civ. A. No. 69–C–54–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

April 6, 1972.

Robert T. Winston, Norton, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION

WIDENER, Chief Judge.

This is an action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, denying claimant's application for the establishment of a period of disability under § 216(i) of the Act, 42 U.S.C. § 416(i), and for disability insurance benefits as provided by § 223 of the Act, 42 U.S.C. § 423.

On February 19, 1968, claimant filed an application for a period of disability and for disability benefits, alleging that he had been unable to work since October 15, 1966 because of low back strain and a possible ruptured disc. He has also complained of nervousness and numbness in his legs. After initial denial of his application, claimant's request for a hearing was granted. By written decision dated April 4, 1968, the hearing examiner, having considered the case *de novo*, found that claimant was not under a disability. The Appeals Council affirmed the hearing examiner's decision on May 1, 1969, thereby making the hearing examiner's decision the final decision of the Secretary.

After claimant instituted an action to review the Secretary's determination, this court, pursuant to 42 U.S.C. § 405(g), twice remanded the case to the Secretary for further administrative proceedings. After the second remand, the Secretary, by decision of the Appeals Council rendered June 25, 1971, again held that claimant was not under a disability. The case has been reinstated on the docket and both parties have renewed their motions for summary judgment.

The only issue before this court is whether, from the record, the decision of the Secretary is supported by substantial evidence. "Substantial evidence" is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). If this court finds that the Sec-

retary's decision is so supported, its inquiry must cease, and the Secretary's decision will be affirmed, even though the court might disagree with the Secretary's determination. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962); Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967).

The record discloses that claimant, born October 11, 1923, completed the seventh grade. He currently resides with his wife in Scott County, Virginia. He has no children. His work experience consists of his having been a book builder, a self-employed house painter, an owner and operator of a small grocery store, a theater manager, and a laborer for a landscaping firm. Ketron has not been employed since October, 1966.

On October 15, 1966, Ketron injured his back moving a shrub while working for the landscaping company. In 1957, his back had been broken, and, in 1964, he had sustained another back injury. Claimant was not hospitalized as result of the 1966 injury, although, as an outpatient, he has received heat treatments. Ketron wears a back support and takes from three to six pills (10 mg Librium) daily for pain and nervousness.

Before the hearing examiner, Ketron testified that he could sit for no longer than fifteen or twenty minutes, that standing for thirty minutes hurt his back and made him nervous. He stated that he avoids climbing stairs and lifting objects, but he further stated that, if he were careful, he could lift a twenty-five pound object. He estimated that he could walk two thousand feet before his back would start hurting. Ketron testified that on several occasions he has fallen as a result of numbness in his legs. He stated that he gets the most relief from the back pain when he is in a prone position. As to his nervousness, he stated that sometimes ". . . a funny feeling goes over me, and I turn real red in the face and sweat. . . ." He also stated that he cannot ride in a car further than twelve or so miles without experiencing back pain and nervousness.

Claimant's wife, also testifying before the hearing examiner, stated that it was sometimes necessary for her husband to remain in bed for two days after riding twenty-four miles in a car. Mrs. Ketron also stated that she frequently helped her husband dress.

The first doctor to examine claimant after the October 15, 1966 injury was Dr. B. R. Adkins, a general practitioner, whose examination was conducted five days after the injury occurred. In a report to an insurance company, Dr. Adkins diagnosed Ketron as having low back strain, and possibly a ruptured disc, aggravated by anxiety. It was Dr. Adkins' opinion that claimant was ". . . TOTALLY DISABLED from performing ANY and EVERY kind of duty pertaining to his occupation. . ." as of October 15, 1966, and that such disability would continue indefinitely. In a subsequent report to the Social Security Administration, dated March 6, 1968, Dr. Adkins noted that he had found tenderness in the lumbosacral region. There was, however, good range of motion and the straight leg raising test was negative bilaterally. Dr. Adkins stated that claimant had refused a lumbar myelogram which would be helpful in determining whether or not Ketron had a herniated disc. The report contained the following statement:

"[Ketron] states he has pain as severe now as when he first injured his back, but we have no objective evidence to justify his complaint."

Dr. Adkins also felt that Ketron's "symptoms have been aggravated by anxiety and desire for compensation. . . . "

During the period March 5, 1967 through October 5, 1967, Ketron was seen by Dr. William L. Griggs, Jr., a general practitioner. Dr. Griggs' report recites claimant's prior back injuries and prior treatments and states that claimant has had low back pain since October, 1966. The report concludes:

"Due to personal reasons he will not have surgery. He cannot do any work

in his present condition prognosis very poor."

Dr. J. G. McFaddin, a board certified orthopedic surgeon, examined Ketron in March, 1967 and again in April, 1968. Dr. McFaddin found no evidence of gross orthopedic impairment and noted that claimant walked without a limp. The examinations revealed a normal lumbar curve, normal vertebral alignment, normal lateral flexion, and normal range of motion. Dr. McFaddin summarized his findings and conclusions as follows:

"Mr. Ketron, objectively, has a mild degree of impairment relative to the lumbosacral region, as manifested by spasm, and even though he exhibits relatively normal motion in the lumbar spine. I believe there is some pain in the extremes of flexion. He has no impairment in the upper and lower extremities. His reflexes remain intact. His radiological findings are consistent with an old compression fracture of mild degree, involving the third lumbar segment. He may well have a lumbosacral disc, but this is not manifested by nerve root involvement, or loss of function of the lower extremities."

Dr. McFaddin did not find Ketron's condition progressive and thought that a back support was adequate treatment.

Additionally, Dr. McFaddin believed Ketron had a mild psychoneurotic disorder and a chronic anxiety reaction. He noted that Ketron was poorly motivated and "that his present circumstances are satisfactory to him." Dr. McFaddin thought Ketron physically capable of work that did not "require prolonged or strenuous use of the back or lower extremities," noting that claimant "can climb stairs, kneel, but he cannot bend or lift weights over thirty or forty pounds."

A board certified psychiatrist, Dr. M. D. Hogan, Jr., examined Ketron on November 12, 1968. Dr. Hogan found Ketron to be a man of good judgment, capable of handling money, and of "dull average intelligence." His examination revealed that Ketron was oriented in all spheres and had no memory impairment. Dr. Hogan's report states:

"I can offer no psychiatric diagnosis in this patient. His explanations of why he is 'very nervous' are not compatible with true nervous disorders and he certainly presents no clinical evidence of any psychiatric ailment in this single examination."

After the case was remanded, further medical evidence was received for the purpose of determining claimant's capacity for sitting and standing and the extent of pain incident thereto. Ketron submitted an additional report from Dr. Griggs, which contains the following statement: "It is my opinion that (Ketron) is unable to stay quiet, for very long." Ketron was examined May 13, 1970 by Dr. Harry W. Bachman, Jr., a board certified orthopedic surgeon. Dr. Bachman's examination revealed "rather marked tenderness in the lumbosacral area without radiation of pain into (the) extremities." No tenderness was found in the sciatic notches. No spasm and no scoliosis were discovered in the spine. Dr. Bachman noted jerking motions when testing for range of motion in the spine, but believed this to be result of voluntary resistance on the part of claimant. He also noted voluntary resistance when testing for flexion in the hips at 90 degrees, but noted that claimant did not state that such flexion produced pain. The straight-leg raising test and the Babinski signs were both negative bilaterally. There was an old, very minimal, well-healed compression fracture of the third lumbar vertebra. "A sclerosis is noted around the apophyseal joints. The sacroiliacts appear to be normal." Dr. Bachman's findings and conclusions were as follows:

"It is my impression that this man has back pain of undetermined origin. It is my own feeling that he does not have orthopedic pathology other than the minimal compression fracture as

noted which I feel have no functional disability. In regard to the range of motion in his spine it should be noted that he does not forward flex at all either from a standing position or from a kneeling position. The latter test is used to test for possibility of functional complaints. There is no particular limitation of motion—lateral bending involvements but hyperextension is limited to essentially 5 degrees because of the production of low back pain. Whether or not this is a true limitation of motion or a functional complaint, I cannot be certain.

"Based on this examination I see no reason why this man should not be able to perform occupations within his intellectual capacity. I do not think he has significant orthopedic findings to warrant his present complaints."[1]

After the second remand, an additional report was received from Dr. Bachman. Therein he stated:

"Based on the physical findings, it is my opinion that Mr. Ketron is able to perform eight hours of sustained light work."

Dr. N. E. Hankins, a vocational expert and psychologist, was present and testified at the hearing before the hearing examiner. Dr. Hankins had previously examined all the medical reports heretofore mentioned with the exception of the ones obtained after the case was remanded, namely, the two reports from Dr. Bachman and the second report from Dr. Griggs. On the assumption that claimant had an anxiety neurosis, could not engage in activities that required prolonged and strenuous use of his back or legs, could not lift weights in excess of thirty or forty pounds, or

bend, but could climb, kneel and sit, Dr. Hankins believed that claimant was capable of performing several jobs which existed in the local economy in significant numbers. He specifically mentioned the jobs of dispatcher, security guard, thermostat assembler, machine operator, deburrer and checker. Dr. Hankins was of the opinion that wearing a back brace might possibly interfere with the performance of the job of machine operator, but would not interfere with any of the other jobs mentioned. He further indicated that the job of machine operator would not be suitable for claimant if he had to shift positions frequently and walk about. On the further assumption that claimant could not climb stairs, kneel or lift more than ten pounds, Dr. Hankins thought that claimant could perform the jobs of checker, deburrer and possibly that of thermostat assembler.

■■ The claimant has the burden of proving that he is under a disability as defined by the Social Security Act, 42 U.S.C. § 416. Griffey v. Cohen, 299 F. Supp. 714 (W.D.Va.1969), aff'd. 421 F. 2d 187 (4th Cir. 1970). Of course, this burden need not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541, 545 (4th Cir. 1964). This court is of opinion that claimant has not sustained his burden of proof, as the term must be applied in Social Security cases, for there is substantial evidence to support the conclusion of the Secretary that claimant's impairments, singularly or in combination, do not entitle him to a period of disability or to insurance benefits. In particular, the medical reports of Dr. McFaddin, Dr. Bachman, and Dr. Hogan,

---

1. Complainant objected to the last quoted paragraph of Dr. Bachman's report "as being merely a conclusion and not a factual finding." This court agrees with the Secretary that Dr. Bachman's statement that he found no evidence commensurate with Ketron's complaints is an expert opinion based on factual findings, and, as such, is entitled to be considered. Underwood v. Ribicoff, 298 F.2d 850 (4th

Cir. 1962). Dr. Bachman's opinion that claimant is capable of working is, while not conclusive of the ultimate issue of whether claimant is disabled, relevant and must be considered. Hanes v. Celebrezze, 337 F.2d 209, 214, n. 4 (4th Cir. 1964). *Hanes* apparently overrules an earlier statement in *Underwood*, 298 F.2d at p. 851.

and the testimony of the vocational expert, Dr. Hankins, support the Secretary's decision. § 223(d) (3) of the Social Security Act, 42 U.S.C. § 423(d) (3), requires that impairments be ". . . demonstrable by medically acceptable clinical and laboratory techniques." Although the clinical findings of Dr. McFaddin, Dr. Bachman, and Dr. Hogan were essentially negative, those doctors did find evidence of a mild back impairment, some back pain, and some anxiety. They, however, found no clinical evidence to substantiate the severe impairments claimed by Ketron. In fact, Dr. Adkins, whose reports are generally more favorable to claimant than those of Dr. McFaddin, Dr. Bachman, and Dr. Hogan, was unable to determine if claimant has a herniated disc and was unable to find clinical evidence of pain commensurate with Ketron's complaints.

■■ Of course, the mere existence of one or more impairments is not sufficient by itself to entitle a claimant to a period of disability or to insurance benefits. To be disabling, the impairments must be of such severity that they render the claimant unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d) (1) (A). In considering whether claimant could engage in any substantial gainful activity, the Secretary properly considered the total effect of all the alleged impairments. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962); Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968).

The medical testimony may support a conclusion that claimant is unable to do the strenuous work required of him in his previous jobs. However, the inability to do one's previous work does not by itself constitute disability, as § 223(d) (2) (A) of the Social Security Act, 42 U.S.C. § 423(d) (2) (A) specifically provides:

"[A]n individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."

■ It is true that when the claimant proves he is unable to engage in his former occupation, the burden shifts to the Secretary to prove he can do some work of a substantial gainful nature. Boyd v. Gardner, 377 F.2d 718, 721, n. 4 (4th Cir. 1967). There was credible evidence that the claimant has the physical capacity to do light work. Dr. Bachman and Dr. McFaddin each affirmatively expressed the opinion that claimant has the residual capacity to do light or sedentary work. Although Dr. Hogan did not express an opinion, there is nothing in his report which would support a contrary conclusion. On assumptions consistent with claimant's conditions as found by Dr. McFaddin and Dr. Hogan, and as found by Dr. Bachman after the case was remanded, the vocational expert was of opinion that claimant could perform several jobs which exist in significant numbers in the national and local economy.

In the opinion of the court, the evidence of Drs. McFaddin and Bachman is entitled to more weight than the evidence of the vocational expert. Each are board certified orthopedic surgeons who must deal with countless numbers of injuries the same or similar to that of the plaintiff.

■■ To the extent that there was a conflict in the evidence, medical or nonmedical, it was incumbent upon the Secretary to resolve those differences. Moss v. Gardner, 411 F.2d 1195 (4th Cir. 1969). In particular, it should be noted that claimant's subjective symptoms of pain were properly considered, for pain may be so severe as to be disabling. But such subjective complaints

of pain must be evaluated with due consideration for credibility, motivation, and medical evidence of impairment. Dvorak v. Celebrezze, 345 F.2d 894, 897 (10th Cir. 1965). In the opinion of the court, it was reasonable for the Secretary to conclude that claimant's subjective evidence was overcome by contrary medical findings.

From a consideration of the record, it is apparent that the Secretary's decision is supported by substantial evidence. Accordingly, an order is this day entered granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment.