Veldon **BAKER**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

Civ. A. No. 74-48-A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Oct. 21, 1974.

Carl E. McAfee, Norton Va., for plaintiff.

Ronald D. Hodges, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION AND ORDER

TURK, Chief Judge.

Veldon Baker has filed this suit challenging the final decision of the Secretary of Health, Education and Welfare denying his claim for black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 et seq. Jurisdiction is pursuant to § 413(b) of the Act, 30 U.S.C. § 923(b) which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The only issue to be decided by this court is whether the Secretary's decision is supported by substantial evidence, and if it is, this court must affirm.

To establish entitlement to benefits on the basis of a coal miner's total disability due to pneumoconiosis, the plaintiff must establish that he was a coal miner, that he is totally disabled due to pneumoconiosis, and that his pneumoconiosis arose out of employment in the nation's coal mines. 20 C.F.R. § 410.410. Subpart D, 20 C.F.R. § 410.401 et seq. lists several ways to establish disability due to pneumoconiosis, but the Secretary concluded that plaintiff failed to prove total disability under any of the tests. While there is some medical evidence which shows the existence of a respiratory disorder, this court is constrained to agree with the Secretary's conclusion.

Plaintiff is now forty-three years old (born August 23, 1931). He completed the seventh grade in school and started working full-time in 1946. In 1948 he got his first job in the nation's coal mines and worked as a miner until 1966. During this period of over fifteen years, he worked for some thirty different coal companies.

He quit working in the mines in 1966 following a gunshot wound in the right arm which required the amputation of the lower arm. As a result of this injury, the Social Security Administration concluded that Mr. Baker was not able to engage in any substantial gainful activity and consequently awarded disability benefits on May 8, 1966.

At his "black lung" disability determination hearing, plaintiff testified as to the dusty conditions in the mines, especially in the positions of drillman and cutting machine helper—positions that he occupied frequently. Mr. Baker further testified that he now has trouble breathing, in that he could hardly do anything without losing his breath and has difficulty in sleeping. He also stated that since he quit working in the mines his breathing problems have worsened.

As for medical diagnosis of plaintiff's ailments, the record below is replete with medical reports, which, not surprisingly, are somewhat conflicting. These reports will be briefly summarized below.

An x-ray taken June 25, 1970, and read by Dr. J. K. Bentley, a radiologist, reflected class O changes under the International Labour Office (ILO) classification, plus metal shot in and around plaintiff's right axilla. On May 28, 1971, Dr. D. P. Forrester, a radiologist and a reader of coal miner's chest x-rays certified by the National Institute of Occupational Safety and Health of the Public Health Service, read the x-ray taken on June 25, 1970, using a roentgenographic interpretation. She indicated that the film was not completely negative in that there were small rounded opacities of type P, O/O in profusion, and small irregular opacities of type S, O/O in profusion. There were no large opacities.

On August 28, 1972, plaintiff had pulmonary function studies performed for the Virginia State Agency at the Park Avenue Hospital in Norton, Virginia. In one series of breathing tests, plaintiff showed 41.1% of predicted forced vital capacity. He also showed a forced expiratory volume of 330 cc per second compared to a predicted 3360 or 9.8% and a maximum voluntary ventilation of six liters per minute compared to a predicted 148. The interpretation was that plaintiff showed the presence of a severe degree of both restrictive and obstructive functional defect, unchanged by bronchodilator. However, it was further reported that plaintiff's cooperation was poor and deliberate. Understandedly, the Administrative Law Judge gave little weight to this report.

At the request of the Virginia State Agency, Dr. N. Shah next performed and reported the results of further pulmonary function studies done on October 13, 1972, at Norton Community Hospital. From the tracings, he stated that plaintiff revealed 33.82 liters per minute as compared to a predicted 158 in his maximal breathing capacity, a maximal vital capacity of 2.73 liters compared to a predicted 4.2, and one second vital ca-

pacity of .44 liters. The plaintiff's cooperation reportedly was good.

The Administrative Law Judge opined that these values were unbelievable. This conclusion was not based on mere conjecture, because the Virginia State Agency had Dr. Shah's pulmonary function study reviewed by Dr. D. C. Williams, a medical consultant and a general practitioner, and on October 31, 1972, Dr. Williams stated that he found the report and tracing to be unacceptable.

Plaintiff then underwent additional pulmonary function studies for the Virginia State Agency, performed December 1, 1972, by Dr. R. P. O'Neill, an internist. From the tracing, Dr. O'Neill commented that plaintiff's vital capacity was normal, his maximal breathing capacity was decreased (shown as 75% of predicted), and his maximum mid-expiratory flow and forced expired volume in one second were normal. (FEV $_1$—3.14 and MVV—113.82).

Lastly, Dr. C. L. Miller reported the results of a general medical evaluation for "black lung" purposes, done February 7, 1973. Plaintiff had a cough productive of phlegm. He complained of shortness of breath on walking up hill or climbing stairs but not from walking on level ground. Also, he occasionally had dyspnea at night. His other history included total disability from a shotgun injury to his right arm with an amputation and the smoking of 1½ packs of cigarettes daily. On examination, plaintiff showed a normal blood pressure, no neck vein distention, a slight chest deformity from his injury without abnormal breath sounds, and essentially normal heart rate and sounds. Dr. Miller diagnosed bronchitis, borderline chronic, and commented that plaintiff's breathing impairment was certainly not total but probably was minimal.

Pursuant to § 411(b) of the Act, 30 U.S.C. § 921(b), the Secretary is required to prescribe the standards for determining whether a miner is totally disabled due to pneumoconiosis; accordingly, several methods have been established, e. g. 20 C.F.R. §§ 410.410—.430, 410.490. But under any of the alternative tests, plaintiff has failed to meet his burden of proof.

The first alternative is through the interim adjudicatory rules. 20 C.F.R. § 410.490. Under these rules, a rebuttable presumption of total disability may be made where (1) an x-ray, biopsy, or autopsy confirms the existence of simple pneumoconiosis, or (2) in the case of a miner who worked fifteen years in underground or comparable coal mine employment, ventilatory function studies establish the presence of a chronic respiratory or pulmonary disease as demonstrated by values contained in the regulation.

With respect to the first test under this alternative, a chest x-ray, biopsy, or autopsy must establish the existence of pneumoconiosis for the presumption of total disability to arise. A finding of pneumoconiosis by x-ray may be made if a chest x-ray establishes the existence of pneumoconiosis classified as category 1, 2, 3, A, B, or C according to designated classifications systems in 20 C.F.R. §§ 410.414(a), 410.428. From the chest x-ray done on June 25, 1970, there were slightly varying interpretations by two different radiologists as to the lung changes visualized. Dr. Bentley found class O changes under the ILO classification. Dr. Forrester, made a more detailed report on a form employed for roentgenographic interpretations under the Act. She found no large opacities, but small irregular opacities of O/O class were present. Neither interpretation established that plaintiff had pneumoconiosis. A chest x-ray classified as category O, including subcategory O/O under the VICC/Cincinnati Classification is not accepted as evidence of pneumoconiosis. 20 C.F.R. § 410.428.

However, the presumption of total disability under the interim adjudicatory rules will also arise where a miner who has worked many years in the mines exhibits a chronic respiratory or pulmonary disease through ventilatory function study results equal to or less than values specified in 20 C.F.R. § 410.490

(b)(1)(ii).[1] Specifically, under this second part, for a man of plaintiff's height (66½) inches as found by Dr. O'Neill), if his $FEV_1$ is equal to or less than 2.3 and his MVV is equal to or less than 92, the presumption of total disability will arise. However, since Dr. O'Neill found plaintiff's $FEV_1$ to be 3.14 and his MVV to be 113.82, the presumption of total disability will not arise as both values considerably exceed the values set out in § 410.490.

■■ While the Administrative Law Judge discounted heavily the ventilatory function study results obtained by the Park Avenue Hospital and Dr. Shah, it was not without good reason. Plaintiff's cooperation at the Park Avenue Hospital test was described as poor and deliberate. Lack of cooperation is one factor to consider in determining the credibility of the test. Brasher v. Celebrezze, 340 F.2d 413 (8th Cir. 1965). Dr. Shah also reported the results of a pulmonary function study that indicated a severe reduction in plaintiff's pulmonary function. However, Dr. Williams in reviewing the report and the tracings associated with it, stated that they were unacceptable. The Secretary and not this court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony and to determine the case accordingly. Stone v. Finch, 434 F.2d 364 (4th Cir. 1970); Ketron v. Finch, 340 F.Supp. 845 (W.D.Va. 1972). Since plaintiff cannot qualify under either part of the interim adjudicatory rules (20 C.F.R. § 410.490), he must turn to the alternatives for entitlement set out in the permanent rules 20 C.F.R. §§ 410.410—.430.

■ The second alternative test is provided for in 20 C.F.R. § 410.418. Under this test, there is an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis if he is suffering from a chronic dust disease of the lung, which when diagnosed by x-ray, yields one or more large opacities and would be classified in category A, B, or C (that is, as "complicated pneumoconiosis"). In plaintiff's case, however, where the weight of the evidence establishes that he does not even have simple pneumoconiosis, such a presumption based on complicated pneumoconiosis will not arise.

The third alternative to entitlement is found in § 410.422 which provides that a determination of total disability due to pneumoconiosis is made in accordance with this section when the provisions of § 410.418 do not apply, or when the miner has a chronic respiratory or pulmonary impairment for purposes of § 410.414(b). Under § 410.422, whether or not pneumoconiosis in a particular case renders a miner totally disabled is determined from all the facts of the case, but primary consideration is given to the medical severity of the pneumoconiosis, § 410.424, and also consideration is given to the miner's age, education, and work experience, § 410.426.

Section 410.424 provides that medical considerations alone shall justify a finding that a miner is totally disabled when his impairment is listed in the Appendix to Subpart D—Total Disability or Death Due to Pneumoconiosis,[2] or is one that is

---

1. 

| Height (inches) | Equal to or less than —— | |
| --- | --- | --- |
| | $FEV_1$ | and MVV |
| 67" or less | 2.3 | 92 |
| 68" | 2.4 | 96 |
| 69" | 2.4 | 96 |
| 70" | 2.5 | 100 |
| 71" | 2.6 | 104 |
| 72" | 2.6 | 104 |
| 73" or more | 2.7 | 108 |

2. "A miner with pneumoconiosis who meets or met one of the following sets of medical specifications, may be found to be totally disabled due to pneumoconiosis at the pertinent time, in the absence of evidence rebutting such finding:

(1) Arterial oxygen tension at rest (sitting or standing) or during exercise and simultaneously determined arterial $p^{co2}$

equivalent to a listing therein, and the impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. Clearly, such listings which involve severe lung and heart conditions or great restriction in the oxygen transfer ability of the lungs, are not present here.

■■ Section 410.426 provides that where a plaintiff's pneumoconiosis neither constitutes a listing nor the equivalent thereof, he shall nevertheless be found disabled if the pneumoconiosis prevents the miner not only from engaging in his previous coal mine work, but also, considering his age, education, and work experience, precludes him from engaging in any other kind of comparable and gainful work available to him in the immediate area of his residence. In conjunction with this section there are set out certain medical criteria which if met, will qualify plaintiff under it to a finding of total disability due to pneu-moconiosis. First, there is a table of ventilatory function study values which must not be exceeded by actual test results for a finding of total disability due to pneumoconiosis to be made.[3] However, as the credible evidence demonstrates, these values are for less than those obtained upon testing plaintiff's breathing capability and therefore, total disability will not arise here. The second criterion involves physical performance testing. Since no testing was performed, this criterion is not applicable. The third and final criterion indicates that where other relevant evidence establishes that the miner has a chronic respiratory or pulmonary impairment, he will be found totally disabled if such impairment prevents him not only from doing his previous coal mine work, but also, considering his age, education, and work experience, prevents him from engaging in comparable and gainful work. It must be emphasized that a miner will be determined to be under a disability

equal to, or less than the values specified in the following table:

| Arterial $p^{co2}$ (mm. Hg) | Arterial $p^o$ equal to or less than (mm. Hg) |
|---|---|
| 30 or below | 65 |
| 31 | 64 |
| 32 | 63 |
| 33 | 62 |
| 34 | 61 |
| 35 | 60 |
| 36 | 59 |
| 37 | 58 |
| 38 | 57 |
| 39 | 56 |
| 40 or above | 55 |

or
(2) Cor pulmonale with right-sided congestive failure as evidence by peripheral edema and liver enlargement, with:
(A) Right ventricular enlargement or outflow tract prominence on x-ray or fluoroscopy; or
(B) ECG showing QRS duration less than 0.12 second and R of 5 mm. or more in $V_1$ and R/S of 1.0 or more in $V_1$ and transition zone (decreasing R/S) left of $V_1$; or
(3) Congestive heart failure with signs of vascular congestion such as hepatomegaly or peripheral or pulmonary edema, with:

(A) Cardio-thoratic ration of 55 percent or greater or equivalent enlargement of the transverse diameter of the heart, as shown on teleroentgenogram (6-foot film); or
(B) Extension of the Cardiac shadow (left ventricle) to the vertebral column on lateral chest roentgenogram and total of S in $V_1$ or $V_2$ and R in $V_5$ or $V_6$ of $35_3$mm. or more on ECG.

| 3. Height (inches) | MVV (MBC) equal to or less than | $FEV_1$ equal to or less than |
|---|---|---|
| | L./Min. | L. |
| 57 or less | 52 | 1.4 |
| 58 | 53 | 1.4 |
| 59 | 54 | 1.4 |
| 60 | 55 | 1.5 |
| 61 | 56 | 1.5 |
| 62 | 57 | 1.5 |
| 63 | 58 | 1.5 |
| 64 | 59 | 1.6 |
| 65 | 60 | 1.6 |
| 66 | 61 | 1.6 |
| 67 | 62 | 1.7 |
| 68 | 63 | 1.7 |
| 69 | 64 | 1.8 |
| 70 | 65 | 1.8 |
| 71 | 66 | 1.8 |
| 72 | 67 | 1.9 |
| 73 or more | 68 | 1.9 |

*only* if his pneumoconiosis is the primary reason for his inability to engage in such comparable and gainful work. 20 C.F.R. § 410.426(a). Medical impairments other than pneumoconiosis may not be considered. *Id.* In the case at hand, plaintiff was held disabled for the purpose of disability insurance benefits by reason of the amputation of his right arm and a frozen shoulder, and not as a result of pneumoconiosis. The Secretary concluded that plaintiff was not totally disabled under this third criterion, and, in light of Dr. Miller's opinion that at most plaintiff had chronic bronchitis which was termed to be a minimal impairment, this court will not second guess that conclusion.

The function of this court on review is not to try the matter *de novo* but to leave the findings of facts to the Secretary and to determine upon the whole record whether the Secretary's decision is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Accordingly, summary judgment is granted in favor of the defendant, and it is so ordered.