Albert YANUSHEFSKY

v.

**David MATHEWS, Secretary of Health, Education and Welfare.**

Civ. A. No. 75–2525.

United States District Court,
E. D. Pennsylvania.

Sept. 3, 1976.

---

Lester Krasno, Pottsville, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., E.D.Pa., Kenneth Ritchie, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

HANNUM, District Judge.

Presently before the Court are cross-motions of the parties for summary judgment on an appeal from a final decision of the Secretary of Health, Education and Welfare denying plaintiff's claim for black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, *as amended*, Title 30 U.S.C. § 901 *et seq.* The Administrative Law Judge's decision of June 26, 1975, holding that Albert Yanushefsky is not entitled to benefits became the final decision of the Secretary in this case when the Appeals Council affirmed it on August 27, 1975. Jurisdiction is pursuant to § 413(b) of the Act, Title 30 U.S.C. § 923(b), which incorporates § 205(g) of the Social Security Act, Title 42 U.S.C. § 405(g).

Under Title 42 U.S.C. § 405(g), the Court's role in reviewing the Secretary's decision is delimited to making a determina-

tion as to whether there is "substantial evidence" in the record as a whole to support the finding of the Secretary that plaintiff does not qualify for black lung benefits. In this regard, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" it is more than a "scintilla" but "less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971), *cert. denied*, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971), *rehearing denied*, 403 U.S. 912, 91 S.Ct. 2213, 29 L.Ed.2d 690 (1971); *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). After a careful review of the record and briefs, and for reasons discussed below, the Court is unable to determine whether or not the Secretary's decision is supported by substantial evidence, and, therefore, the matter will be remanded to the Secretary for further findings consistent herewith.

In order for plaintiff to establish his entitlement to benefits under the Act he must establish that he was a coal miner; that he was totally disabled on or before June 30, 1973, due to pneumoconiosis, which arose out of employment in the Nation's coal mines; and that he filed a proper claim for benefits. In the instant matter there is no question that plaintiff was a coal miner or that he filed a proper claim, however, the Secretary has determined that plaintiff has failed to establish that he was totally disabled due to pneumoconiosis.

The record discloses that Mr. Yanushefsky, born October 11, 1923, completed the fourth grade.[1] He currently resides with his wife and he has a child who is a full-time student. Plaintiff worked in and around mines for twenty-five years until 1954 when he quit due to short-windedness. At the present time plaintiff receives benefits from the Commonwealth of Pennsylvania and the Social Security Administration.

While working in the mines plaintiff performed the dirtiest, dustiest work, such as, cutting coal and rock and shoveling coal onto the shaker. He regularly worked at depths of 800 to 1000 feet underground. Upon leaving the mines in 1954 plaintiff undertook lighter forms of work and stopped working entirely on November 13, 1971, at age 59, due to a breathing problem.

Plaintiff testified to a number of symptoms related to pneumoconiosis: loss of weight over the past several years, inability to walk significant distances, pains in the chest, insomnia, necessity to keep his head elevated, cold sweats, necessity to sleep in cold temperatures, discoloration of lips and tightness of chest upon coughing and coughing up dark sputum. Plaintiff further testified that he must take medication to alleviate coughing; he has approximately twelve coughing spells a day lasting fifteen to twenty minutes. Because of the coughing spells plaintiff is unable to drive a car. Plaintiff has been treated for this condition for over five years by his family physician, Joseph G. Tomlin, M.D.

Also testifying at the hearing was William Dzurek, M.D., an examining physician called by plaintiff, who indicated that he performed a complete physical and clinical examination upon plaintiff, including a chest expansion test, exercise tolerance test, x-ray and ventilation study. Among other things, Dr. Dzurek observed that an x-ray study indicated a diagnosis of early second degree pneumoconiosis which is complicated with emphysema.

The medical evidence outside the testimony of Dr. Dzurek is substantial, and the reports are, to a considerable extent, conflicting. The reports that were considered in the Secretary's final decision will be briefly summarized below.

An x-ray examination performed on March 29, 1949, by Peter B. Mulligan, M.D., resulted in a diagnosis that plaintiff had early stages of pneumoconiosis. A second x-ray examination by Dr. Mulligan per-

---

1. See: Certified copy of the Administrative Transcript, Document No. 4 in Civil No. 75–2525 (E.D.Pa. filed December 23, 1975).

formed on November 17, 1971, found changes compatible with pneumoconiosis, ILO category 2–P.

A re-reading of the November 1971 x-ray by Meyer W. Jacobson, M.D., on November 6, 1972, was negative for pneumoconiosis. A second re-reading of this x-ray by Harold J. Schneider, M.D., on December 3, 1973, also found the x-ray negative for pneumoconiosis. Both Dr. Jacobson and Dr. Schneider are NOISH Board certified "final B" readers. In addition, a report by Francis K. Moll, M.D., dated April 23, 1973, found that the x-ray examination yielded no pattern suggestive of significant pneumoconiosis.

A ventilatory study performed on November 17, 1971, by Chung Cho, M.D., indicated an $FEV_1$ determined value of 58% compared to a predicted 83%. The determined MVV value was 25.6 liters per minute compared to a predicted 13.4 liters per minute.[2] The May 8, 1974, report of Dr. Dzurek noted that the ventilation test indicated a vital capacity of 58% of predicted which he determined to be indicative of a serious respiratory ailment. A second ventilatory study performed by Dr. Cho on June 3, 1975, resulted in an $FEV_1$ determined value of 27% compared to a predicted 83% and an MVV determined value of 40 liters per minute compared to a predicted 132 liters per minute.

A report dated March 30, 1972, by Dr. Moll indicated that plaintiff did experience some breathing difficulty. In this report Dr. Moll noted that he found Dr. Cho's November, 1971 findings confusing, particularly with respect to predicted values. Another ventilatory examination of plaintiff performed on May 24, 1972, by Leo J. Corazza, M.D., resulted in an $FEV_1$ determined value of 61% compared to a predicted 75% and an MVV determined value of 37.5 liters per minute compared to a predicted 111 liters per minute. Both Dr. Moll and Dr. Corazza, as well as a third doctor, Fran-

cis M. Dugan, M.D., noted that the ventilatory studies of plaintiff were of doubtful value due to a lack of cooperation. Additionally, Dr. Moll's second examination of plaintiff represented by the April 23, 1973, report, resulted in a determination that plaintiff adequately performed ventilation studies. In this report Dr. Moll concluded that plaintiff had arteriosclerotic cardiovascular disease.

Finally, a June 10, 1975, report prepared by Joseph B. Tomlin, M.D., indicated that he has treated plaintiff since November 13, 1969, and that in his opinion plaintiff has been totally disabled due to pneumoconiosis from November, 1971.

Under the mandate of 30 U.S.C. § 921(b) the Secretary issued regulations to establish guidelines for determining eligibility for black lung benefits. Under these regulations there are essentially three ways in which plaintiff can establish that he is totally disabled due to pneumoconiosis: (1) under the Interim Adjudicatory Rules a rebuttable presumption of total disability due to pneumoconiosis will arise where an x-ray confirms the existence of simple pneumoconiosis or, in the case of a miner who has worked fifteen years in underground or coal mine employment, ventilatory function studies establish the presence of a chronic respiratory or pulmonary disease in accordance with specified values;[3] (2) under the first alternative of the Permanent Rules an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis will arise if he is suffering from a chronic dust disease of the lung, which when diagnosed by x-ray, yields one or more large opacities which result in classification of complicated pneumoconiosis;[4] and (3) under the second alternative of the Permanent Rules a determination of total disability due to pneumoconiosis may be made on the basis of all the facts of the case, where primary consideration is given to the medical severity of the pneumoconiosis although consideration is

---

**2.** This figure appears to be the result of an inadvertent error. The Secretary fails to discuss it in his findings.

**3.** 20 CFR § 410.490.

**4.** 20 CFR § 410.418.

also given to the miner's age, education and work experience.[5]

In ruling on a claim for black lung benefits, it is clearly the function of the Secretary to weigh the evidence and to resolve material conflicts in the testimony. It is equally clear that plaintiff has the burden of establishing total disability due to pneumoconiosis. It is not contemplated, however, that this burden goes to a point beyond a reasonable doubt. *Thomas v. Celebrezze*, ("Thomas") 331 F.2d 541, 545 (4th Cir. 1964); *Ketron v. Finch*, 340 F.Supp. 845, 849 (W.D.Va.1972). In his opinion the Secretary states:

> . . . To be entitled to black lung benefits, the claimant must carry the *burden of proof establishing beyond a reasonable doubt* that he has pneumoconiosis or presumed pneumoconiosis under the applicable sections of Regulation 10 and the Act. (emphasis added).

The Court finds that in evaluating the evidence the Secretary has applied an improper standard as a matter of law. Such a standard would make it nearly impossible for a claimant to establish entitlement to benefits. It would seem the standard is more appropriately described as a fair preponderance of the evidence test, even though, on appeal, findings will not be disturbed if they are supported by something more than a "scintilla" of the evidence.

The evidence in this case is substantial and there are areas of considerable conflict. Aside from the fact that the Secretary was unduly strict in evaluating the evidence, there are instances where conclusions are not supported by adequate reasoning. For example, in rejecting the ventilation studies as a basis entitling plaintiff to the rebuttable presumption of total disability under the Interim Rules, the Secretary places reliance on reports of several physicians which note poor cooperation rendering the results uninterpretable. It is noted, however, that Dr. Cho performed two ventilation studies with similar results indicating performance within the specified range of the presumption. Dr. Cho's 1975 test was rejected as being of questionable relevance to establishing total disability in 1973 and the 1971 test was not discussed at all. While poor cooperation is a factor to be considered, *Baker v. Secretary of Health, Education and Welfare*, 383 F.Supp. 1095, 1099 (W.D.Va.1974), the overall analysis in this instance was not as precise as it could have been.

As a further observation, it is noted that under the second alternative of the Permanent Rules the plaintiff does not get the benefit of a favorable presumption on the issue of total disability. However, under this alternative, the Secretary must consider all the relevant facts of the case in addition to medical or physical performance data. In considering the record as a whole the Court finds convincing evidence of total disability, particularly the reports of Dr. Dzurek and Dr. Tomlin. The contrary position of the Secretary appears to be based almost exclusively on conclusions respecting the x-ray and ventilation studies under the Interim Rules. Although it is not the function of the Court to hold a trial *de novo* at this point, there is a duty to see that the Secretary does not disregard significant portions of the record in reaching his decision. In a complicated case such as this the Court expects findings that are as comprehensive and analytical as feasible. *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974); *Thomas, supra; Boyd v. Folsom*, 257 F.2d 778 (3d Cir. 1958).

---

5.  20 CFR §§ 410.422; 410.414(b).