**Stella D. WARD**

v.

**David MATHEWS, Secretary of Health, Education and Welfare.**

**Civ. A. No. 3–75–93.**

United States District Court,
E. D. Tennessee, N. D.

Sept. 10, 1975.

Joe E. Magill, Clinton, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This matter is before the Court on the cross motions for summary judgment of the plaintiff and the Secretary of the Department of Health, Education and Welfare. Plaintiff is the widow of Lewis Ward, an ex-coal miner who died on April 19, 1974, after his claim for black lung benefits was denied. A Hearing Examiner considered her claim for widow's benefits *de novo* and found, on the basis of the evidence of record and the testimony of plaintiff and her son, that she was not entitled to benefits. The Appeals Council affirmed the Hearing Examiner's decision as the final decision of the Secretary.

The plaintiff contends that Secretary's decision is not supported by substantial evidence because eight exhibits relied on by the Secretary were improperly admitted into evidence.[1] Each exhibit objected to is a Form SSA 2334, and is styled "Roentgenographic Interpretation."

Form SSA 2334 [hereinafter Form 2334] is a standard x-ray interpretation chart used by certified readers of coal miners' chest x-rays who are under contract with the Social Security Administration. According to the Secretary's Acting Chief Medical Officer, the form provides a means of describing all lung abnormalities noted by the physician examining a chest x-ray (Tr. 113). Each Form 2334 contains boxes in which the claimant's name and social security number are entered. Interpreted x-rays are identified on the forms by the dates on which they were taken. Examining physicians, or "film readers", record their interpretations by placing the letter "X" in the appropriate boxes on the form. Boxes also are provided for the date of the interpretation and the film reader's signature, address, title and social security number.

In a posture similar to many black lung cases previously before this Court, the record is replete with conflicting medical opinions on the meaning of certain x-rays. According to the Form 2334's of record,[2] the decedent was x-rayed on at least four separate dates. Three doctors specified that an x-ray dated December 29, 1970 showed no radiographic evidence of pneumoconiosis (Tr. 71, 72, 86). An x-ray dated June 15, 1971, was interpreted as positive by Dr. L. J. Bogartz and negative by Doctors W. L. Murphy and Athena Y. King (Tr. 74, 78, 79). Dr. H. F. White concluded that an x-ray dated April 6, 1973, showed Class II Q pneumoconiosis, while Doctors M. W. Robinson and G. J. Rosenstein found that the safe film showed no evidence of pneumoconiosis (Tr. 80, 85, 87).

Finally, Dr. W. K. Swann concluded that an x-ray dated September 6, 1974, demonstrated category P 1/1 pneumoco-

---

1. Exhibit Nos. 15, 16, 19, 20, 22, 24, 26, & 27.

2. The x-rays have not been made part of the record.

niosis, while Dr. M. W. Donner found the film negative (Tr. 88, 90).

■ The plaintiff objects to the admissibility of each Form 2334 on which results adverse to her claim were recorded. She first contends that each form is inadmissible because she had no opportunity to cross-examine the doctors who completed the forms. This contention is without merit. In *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971), the Supreme Court held:

"We conclude that a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examination, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician."

In the present case, each physician whose Form 2334 plaintiff finds objectionable is certified as a reader of coal miner's chest x-rays by the National Institute of Occupational Safety and Health, Public Health Service. Moreover, plaintiff was entitled to move that subpoenas be issued "for the attendance and testimony of witnesses and for the production of . . . documents which are relevant and material to any matter in issue at the hearing."[3] Her failure to request that subpoenas be issued prevents her from complaining that she was denied an opportunity for cross-examination.[4]

Plaintiff next contends that each Form 2334 was not properly identified by a number and that two of the forms, Exhibits 16 and 22, were not signed by the film readers. The crux of these contentions seems to be that the forms were not sufficiently authenticated to constitute substantial evidence. Both contentions are without factual merit.[5] The initials "AFT" appear on the film reader's signature line of Exhibit No. 16. This was identified in the certified exhibit list as the signature of Dr. A. Franklin Turner (Tr. 2). A rubber stamp impression "Meyer W" appears on the signature line of Exhibit No. 22. The certified exhibit list shows this to be the signature of Dr. Meyer W. Jacobson (Tr. 2). Although each Form 2334 was not "numbered" until made part of the administrative record, each was identified by the name and social security number of the claimant and the date of the x-ray.

Plaintiff finally contends that she has no way of knowing whether each Form 2334 represents the interpretation of a single or a series of x-rays, or whether the doctors who recorded conflicting interpretations were, in fact, disagreeing

3. 20 C.F.R. § 410.469. Whether a subpoena should issue necessarily rests with the Hearing Examiner's discretion.

4. *Richardson v. Perales*, 402 U.S. 389, 407, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) ; K. Davis, *Administrative Law Text* § 14.08, at 281 (3d ed. 1972). *Perales* is distinguishable from the present case in two respects: the claimant in *Perales* was represented by counsel and objected to the Hearing Examiner's admission of the documents into the record. 402 U.S. at 395, 91 S.Ct. 1420. In the present case, the plaintiff failed to object to the exhibits when given the opportunity to do so (Tr. 24). It also is clear that she was fully aware of her opportunity to be represented by counsel, but chose to proceed *pro se* (Tr. 23).

5. Even if these contentions were supported by the facts, it seems that they would still be lacking in merit. "Evidence may be received at the hearing even though inadmissible under rules of evidence applicable to court procedures." 20 C.F.R. § 410.461.

over the interpretation of the same x-ray. As previously noted, the x-rays were sufficiently identified by date on each form. Moreover, the forms expressly state that they are intended to record the "interpretation of a single film." For this reason, plaintiff's final contention is without merit.

Since the plaintiff has directed her brief solely to the questions previously discussed, she has failed to note any other finding of fact that she feels is not supported by substantial evidence. Furthermore, there is no suggestion that the Secretary erroneously applied any law or regulation.

█ The record clearly shows that the plaintiff failed to raise the interim presumption of 20 C.F.R. § 410.490 by either x-ray evidence or ventilatory tests. "Whether an x-ray establishes the evidence of pneumoconiosis is a question of fact that must be resolved by the Secretary's consideration of the interpretative opinions of all physicians who have examined the x-ray". *Harness v. Weinberger*, 401 F.Supp. 9 (E.D. Tenn.1975). Since all Form 2334's were properly admitted by the Hearing Examiner, the Court must accept as conclusive his finding that the "credible x-ray interpretations do not establish that the miner had pneumoconiosis or a disease presumed to be pneumoconiosis" (Tr. 14). To hold otherwise would require the Court to weigh the opinions of medical experts, all of whom appear well qualified. The only ventilatory test in the record shows values in excess of the minimum MVV and $FEV_1$ values needed to raise the interim presumption.[6]

Decedent was employed as a coal miner for over thirty years (Tr. 14). This employment history makes plaintiff eligible, upon a proper showing, for several other evidentiary presumptions that would have aided her in establishing entitlement to benefits. Section 410.462 of the regulations provides that a miner who died from a "respirable disease" is presumed to have died from pneumoconiosis. Death will be considered to have been cause by a respirable disease if death is ascribed to a chronic dust or lung disease and there is a reasonable possibility that death was due to pneumoconiosis.

It appears from the record that decedent's death cannot be ascribed to a chronic dust or lung disease, and there is no evidence suggesting a reasonable possibility that his death was due to pneumoconiosis. There is no positive evidence on the cause of death. No autopsy was performed and the death certificate merely states that decedent died of natural causes (Tr. 69).

There is substantial medical evidence, however, by which the death can be ascribed to heart disease and not to a respiratory or pulmonary impairment.[7] Dr. F. L. Rawson examined decedent almost six months before death and found an advanced condition of cardiovascular origin (Tr. 119–20).[8] Although Dr. Rawson was aware of decedent's complaint of "coal dust on the lungs", he in no way attributed the heart condition to a pulmonary or respiratory disease. Dr. S. G. McNeely stated that he was decedent's physician for many years and speculated that the cause of death was "arteriosclerotic heart disease" (Tr. 118). Dr. V. McLaughlin treated decedent extensively at Oak Ridge Hospital for three weeks prior to the date of death. In a report Dr. McLaughlin concluded that decedent had dyspnea and

---

6. The decedent's height was 69½ inches. The minimum test values for a person of this height are: $FEV_1$: 2.5L; MVV: 100 L/Min. The following are the results of decedent's ventilatory test: $FEC_{1o}$: 3.570 L; $FEV_{1p}$: 2.710 L; $MVV_0$: 155 L/Min; $MVV_P$. 125 L/Min. The diagnosis was "normal ventilatory function study". (Tr. 75).

7. *See* Finding of Fact No. 7, Tr. 15.

8. *See* Finding of Fact No. 6, Tr. 15.

orthopnea as related to heart failure. His final diagnosis was severe calcific aortic stenosis and refractory congestive heart failure (Tr. 97). At decedent's request, he was discharged to "go home and die in comfort". Dr. McLaughlin stated in the discharge report that he expected that decedent would die in refractory heart failure after returning home. Decedent died three days later at the age of 72. Since there is substantial evidence that decedent's death cannot be ascribed to a chronic dust or lung disease, plaintiff was not entitled to the presumption of 20 C.F.R. § 410.462.

Sections 410.414 and 410.454 operate to raise a presumption of total disability or death due to pneumoconiosis on a showing of a "totally disabling chronic respiratory or pulmonary impairment". There is some evidence that decedent had a lung impairment, but the mere showing of a respiratory or pulmonary impairment in itself is insufficient. The evidence shows that the decedent's death or any disability he allegedly was under was the result of advanced heart disease [9] and not a chronic respiratory or pulmonary impairment. This conclusion is supported by x-ray evidence, medical reports, ventilatory tests, and "other relevant evidence" as defined in Sections 410.414 and 410.454. Although plaintiff and her son testified that prior to his death, decedent exhausted easily, was short of breath, lost weight and could not work, they also stated that he left the mines because of heart trouble (Tr. 33). It was reasonable for the Hearing Examiner to conclude, in light of all the evidence, that decedent's physical symptoms were due to heart disease.

The Court has examined the entire record and is satisfied that the Secretary's findings are supported by substantial evidence. For the foregoing reasons, it is ordered that the Secretary's motion for summary judgment be, and the same hereby is, granted.

Order accordingly.

9. *See* Finding of Fact No. 7.