Harry E. WELSH

v.

Caspar W. WEINBERGER, Secretary of Health, Education and Welfare of the United States of America.

Civ. No. K–74–1207.

United States District Court, D. Maryland.

Dec. 18, 1975.

---

Joseph B. Harris, Baltimore, Md., for plaintiff.

Jervis S. Finney, U. S. Atty., John W. Sheldon, Asst. U. S. Atty., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

Plaintiff, Harry E. Welsh, pursuant to 42 U.S.C. § 405(g) incorporated by reference through 30 U.S.C. § 923(b), asks this Court to reverse a final decision of the Secretary of Health, Education and Welfare (the Secretary) denying his claim for "black lung" benefits under the Federal Coal Mine Health and Safety Act of 1969 as amended, 30 U.S.C. § 901 *et seq.* (the Act). Plaintiff's initial application for benefits under the Act on January 25, 1971 (Tr. at 67–70) was de-nied (Tr. at 71–72). The Bureau of Disability Insurance of the Social Security Administration again denied the application on reconsideration (Tr. at 74–75). Plaintiff filed a request for a hearing on his application on September 20, 1971 (Tr. at 92), but before the hearing was held, the Act and the applicable regulations were amended. Pursuant to 30 U.S.C. § 941 and 20 C.F.R. § 410.490, all denied and pending claims on July 1, 1973 were to be reconsidered. Plaintiff's application was accordingly reexamined under the amended Act. However, plaintiff was again denied benefits on August 8, 1973 (Tr. at 94–96). On May 15, 1974, Welsh was afforded a hearing on his application before an administrative law judge (Tr. at 21–66). On June 19, 1974, the administrative law judge found that the plaintiff was not entitled to benefits under the Act (Tr. at 8–13).[1] That decision was approved by the Appeals Council on September 10, 1974 (Tr. at 4). As such, it is a final decision by the Secretary.

Welsh is seventy-two years old. He was employed in the coal mines for over ten years (Tr. at 60, 77, 78, 79). In order to establish his entitlement to benefits under the Act, plaintiff must show that he was a coal miner, that he is totally disabled due to pneumoconiosis, and that his pneumoconiosis arose out of his employment in the coal mines. 20 C.F.R. § 410.410(b)(1).[2]

Several different methods have been provided by the Secretary, 20 C.F.R. §§ 410.410–.430, 410.490, pursuant to which a claimant may prove that he is a coal miner totally disabled because of pneumoconiosis.

### First Alternative

The first alternative is set forth in the interim adjudicatory rules, 20 C.F.R.

---

1. One of the alternative reasons for denial stated by the administrative judge was that plaintiff had not appropriately filed and sought an application under appropriate state statutes for workmen's compensation benefits. The Government has not in any way relied upon or attempted to justify that ground for denial of the benefits sought by plaintiff—a ground plaintiff contends is legally unsound. That basis for denial of plaintiff's claim is accordingly disregarded by this Court.

2. Pneumoconiosis is defined by 30 U.S.C. § 902(b) as "a chronic dust disease of the lung arising out of employment in a coal mine".

§ 410.490(b), which state that a rebuttable presumption of total disability arises when a chest roentgenogram (x-ray), biopsy or autopsy establishes the existence of simple pneumoconiosis. The only x-ray in the within case, that of May 25, 1971, was read on three different occasions by three different doctors. Dr. William R. Newman, who is certified as a reader of coal miner's chest x-rays by the National Institute of Occupational Safety and Health, Public Health Service, made the first reading and concluded that the lung fields were essentially clear with no large opacities but with some irregular opacities "small s" in size (Tr. at 81). On plaintiff's initial reconsideration, the disability examiner, S. Carroll, wrote: "While the chest x-ray of 5/25/71 establishes simple pneumoconiosis, there is no evidence of the complicated type or any other disabling respiratory condition due to the pneumoconiosis. * * * " (Tr. at 74). Dr. W. Linell Murphy, also a certified reader of coal miners' chest x-rays, conducted the second reading and read the film as negative on March 28, 1973 (Tr. at 104). Dr. Robert R. Lukin, a Fellow or Resident in Radiology also read the x-ray as negative on July 12, 1973 (Tr. at 107).

Dr. Bowie L. Grant, a general practitioner specializing in internal medicine, submitted a report in which, without any detailed observations or any reasons, he concluded Welsh had chronic obstructive pulmonary disease. However, he also stated that the July 19, 1971 x-ray showed no active pulmonary disease (Tr. at 88).

Dr. R. P. Wilson, a general practitioner, has written that his examination of Welsh on July 24, 1971 revealed chronic bronchitis and asthma. Dr. Wilson noted Welsh had been forced to stop mine work in 1929 because of pulmonary problems. However, like Dr. Grant, Dr. Wilson included no objective medical observations to support those conclusions. (Tr. at 90). On April 13, 1972, Dr. Wilson wrote a second report, stating that plaintiff had had chronic bronchitis and emphysema since 1929 and x-rays revealed their continued existence, that urinalysis showed glycosuria, and that physical examination revealed rales through Welsh's chest and enlargement of prostate gland. Dr. Wilson's April 13, 1972 diagnosis was chronic bronchitis, emphysema, carcinoma of prostate, and diabetes mellitus. (Tr. at 99–102). On February 18, 1974, Dr. Wilson stated plaintiff was totally disabled due to emphysema and pneumoconiosis (Tr. at 114).

Plaintiff himself testified as to breathing problems commencing in 1925 and of being treated with medication since the late 1920's and of other problems including diabetes and coughing spells. Plaintiff also testified he had never been hospitalized for lung problems. (Tr. at 44–51).[3]

▮▮▮▮ Welsh claims that the initial reading establishes pneumoconiosis under 20 C.F.R. § 410.490 and therefore gives rise to the aforementioned rebuttable presumption. Plaintiff further contends that the Secretary should be estopped from denying the existence of simple pneumoconiosis since the Secretary in the initial reconsideration affirmed the presence on May 25, 1971 of simple pneumoconiosis and that while on May 25, 1971 simple pneumoconiosis did not give rise to a presumption of total disability under the regulations, it has done so since July 1973 under the current regulations. But the flaw in that approach is that the Social Security Administration (SSA) was, on all dates relevant herein, and continues to be, specifically authorized to procure additional evidence at any time in connection with any pending claim. 20 C.F.R. § 410.240(a). That is what was done in this case when the additional readings of the x-ray from Drs. Murphy and Lukin were obtained in 1973. Furthermore, plaintiff seemingly had the opportunity to obtain additional x-rays or readings of the existing x-ray

---

3. Plaintiff also testified at the hearing that until 1943, he smoked two packs of cigarettes daily (Tr. at 37) but has not smoked since, and that he has a heart condition (Tr. at 51).

at the expense of the SSA. 20 C.F.R. § 410.240(h). When there is conflicting evidence, it is up to the Secretary to resolve the conflicts.[4] The Secretary's conclusion may not be disturbed upon review in a federal district court if it is supported by substantial evidence, pursuant to 30 U.S.C. § 923(b) incorporating 42 U.S.C. § 405(g) by specific reference. *See generally, Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Oppenheim v. Finch,* 495 F.2d 396, 397 (4th Cir. 1974); *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972); and, in a "black lung" case, *see Baker v. Secretary of Health, Education and Welfare,* 383 F.Supp. 1095 (W.D.Va.1974). The Secretary's conclusion that the x-ray evidence did not establish the existence of simple pneumoconiosis is more than amply supported by the record in the within case.

### Second Alternative

Under the interim adjudicatory rules, the presumption of total disability also arises if the miner has worked in the mines for at least a certain length of time provided by the regulation (as plaintiff did), and if ventilatory studies (which plaintiff underwent) establish the existence of chronic respiratory or pulmonary disease as demonstrated by certain values contained in the regulations. 20 C.F.R. § 410.490. For a person of plaintiff's height, 69 inches (Tr. at 84), the presumption of total disability arises only if his Forced Expiratory Volume (FEV(1)) is equal to or less than 2.4 liters and his Maximal Voluntary Ventilation (MVV) is equal to or less than 96 L./Min. The results of plaintiff's ventilatory study done on May 25, 1971 showed that his FEV(1) was 3.07 liters and his MVV was 82.2 L./Min. (Tr. at

84). Since both values were not equal to or less than the required values, plaintiff could not establish his entitlement under the interim adjudicatory rules by reference thereto.[5]

### Third Alternative

Under the permanent rules, plaintiff can establish his absolute entitlement under 20 C.F.R. § 410.418 by demonstrating the existence of complicated pneumoconiosis through x-ray, biopsy or autopsy. No x-ray in the within case is claimed to show complicated pneumoconiosis and no biopsy was performed. Thus, plaintiff has not established his entitlement to benefits in that manner.

### Fourth Alternative

The fourth alternative by which plaintiff could establish his right to benefits is found in 20 C.F.R. § 410.422 which provides that whether pneumoconiosis renders a miner totally disabled depends upon all of the facts of the case, with particular emphasis on the medical severity of the pneumoconiosis. 20 C.F.R. § 410.424. Under 20 C.F.R. § 410.424, medical considerations alone justify a finding of total disability if the miner's impairment is one of those listed in the Appendix to the regulations or is medically the equivalent of such a listed impairment, and if other evidence, such as the fact that the applicant engaged in comparable, gainful work, does not rebut such a finding. Plaintiff does not claim that he is suffering from any of the impairments listed in the Appendix or the equivalent thereof. When the impairment does not cause a condition listed in the Appendix, 20 C.F.R. § 410.426 provides that the miner shall still be found totally disabled if the pneumoconi-

---

**4.** Negative x-rays cannot solely support a denial of "black lung" benefits. 30 U.S.C. § 923(b); 20 C.F.R. § 410.414(c). However, negative x-rays plus other evidence can support such a denial. *National Independent Coal Operators' Ass'n v. Brennan,* 372 F.Supp. 16, 24 (D.D.C.1974).

**5.** The results of the pulmonary function studies of plaintiff were reviewed by a certified

medical reader and determined to be satisfactory for purposes of adjudication. (Tr. at 86). Another doctor, an internist specializing in pulmonary diseases and also a certified medical reader of coal miners' chest x-rays, also testified as to the ventilatory function study reports and roentgenogram interpretations. (Tr. at 97, 106).

osis prevents him from engaging not only in his previous coal mine work but also, considering his age, education and experience, if it prevents him from performing any other kind of comparable work in the immediate area of his residence. In that regard, 20 C.F.R. § 410.-426 provides that certain medical criteria will entitle a miner to a finding of total disability. First, there is a table of ventilatory function study values. However, since those values are more stringent than those in the interim adjudicatory regulations which plaintiff was unable to meet, plaintiff clearly cannot qualify under that criterion. The second criterion is inapplicable herein since it covers certain physical performance tests which were neither performed nor apparently requested by plaintiff. Under the third criterion, in an instance in which other relevant evidence establishes that a miner has a chronic respiratory or pulmonary impairment, a miner will be found totally disabled if such impairment prevents him not only from doing his coal mine work but also, considering his age, education and work experience, from engaging in other comparable and gainful work. However, that regulation provides that the miner must be disabled because of pneumoconiosis; other medical impairments may not be considered. Thus, it is of no aid to plaintiff, since as discussed *supra* it is for the Secretary, not this Court, to resolve the factual and opinion conflicts with regard to whether plaintiff has pneumoconiosis, subject to this Court's review pursuant to the substantial evidence standard.

### Conclusion

Plaintiff's doctors submitted their conclusions that plaintiff was totally disabled (Tr. at 88, 114). However, the administrative law judge held that those findings were not sufficiently supported in terms of details and specifics (Tr. at 11). Although statements by one or more physicians that an individual is totally disabled are entitled to consideration, they are not determinative and the function of deciding whether an individual is totally disabled due to pneumoconiosis is solely the responsibility of the Secretary, subject to review by this Court. In this case, there is substantial evidence in the record to support the Secretary's conclusion that the plaintiff is not totally disabled due to pneumoconiosis within the meaning of the Act and applicable regulations. Accordingly, this Court is required to affirm, and hereby does affirm, the decision of the Secretary.