**Joe DOCTORMAN, Plaintiff,**

v.

**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare of the United States of America, Defendant.**

No. 75–99–C.

United States District Court,
E. D. Oklahoma.

Jan. 9, 1976.

Clyde Stipe, McAlester, Okl., for plaintiff.

Richard A. Pyle, U. S. Atty., by Betty O. Williams, Asst. U. S. Atty., Muskogee, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

Plaintiff brings this action under 42 U.S.C. § 405(g) for judicial review of the Defendant's final administrative decision that he is not entitled to be paid "black lung" disability benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. §§ 901 et seq. 30 U.S.C. § 922 incorporates 42 U.S.C. § 405(g).

Title IV is designed, in part, to provide for the payment of benefits to miners who are totally disabled by pneumoconiosis. Two basic programs are established by Title IV. Part B which is involved herein is administered by the Secretary of Health, Education and Welfare. Its purpose is to provide payments to miners who became disabled before the Act was passed. Benefits under Part B are paid out of the Federal Treasury. Part C is administered by the Secretary of Labor. Its purpose is to provide benefits to miners who become disabled by pneumoconiosis after the cut off date for Part B, June 30, 1973. The cost of Part C is to be borne by the responsible coal mine operators.

Congress has set out guidelines in Title IV but has provided that the Secretary shall promulgate regulations for the administration of the program therein established. 30 U.S.C. § 921. The Act defines pneumoconiosis as a chronic dust disease of the lung arising out of employment in the Nation's coal mines. 30 U.S.C. § 902(b). The term total disability is to have the meaning given to it by the Secretary's regulations except that a miner shall be considered to be totally disabled by pneumoconiosis when pneumoconiosis prevents him

28

from engaging in gainful employment requiring skills and abilities comparable to those of any employment in a coal mine in which he previously engaged with some regularity and over a substantial period of time. 30 U.S.C. § 923(f).

The Secretary's regulations are found in 20 C.F.R. §§ 410.401 et seq. (20 C.F.R. § 410, hereinafter omitted). Under these regulations a living miner must, in order to establish entitlement to benefits, submit evidence showing that he is a coal miner, that he is totally disabled due to pneumoconiosis, and that his pneumoconiosis arose out of employment in the Nation's coal mines. § 410(b). The regulations provide two avenues through which a miner may establish entitlement to benefits. Interim standards are set out in § 490 and permanent criteria are set out in §§ 401, et seq.

■ Under 42 U.S.C. § 405(g) the Secretary's decision must be affirmed if supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In conducting this review the Court is required to examine the facts contained in the administrative record, evaluate the conflicts, and make a determination therefrom whether the facts support the several elements which make up the ultimate administrative decision. *Heber Valley Milk Company v. Butz,* 503 F.2d 96 (Tenth Cir. 1974).

In this case the ultimate administrative decision is the Decision of the Appeals Council. (Tr. 5–12). The Appeals Council found that:

"The preponderance of the medical and other relevant evidence does not establish, prior to July 1, 1973, the presence of pneumoconiosis or a totally disabling chronic respiratory or pulmonary disease presumed to be pneumoconiosis.

The preponderance of medical and other relevant evidence of record does not establish, prior to July 1, 1973 the existence of a chronic respiratory or pulmonary impairment which would prevent the claimant from engaging in his usual coal mine employment or other comparable gainful work."

Thus, the Appeals Council found that Plaintiff failed to satisfy the second prong of three prong entitlement test set out in § 410(b), that he is totally disabled due to pneumoconiosis.

■ The evidence shows that Plaintiff was born in 1912 and that he has five years of education. (Tr. 47). Plaintiff filed his application for benefits on October 8, 1970 (Tr. 47–50). The application was denied at the various administrative levels. Plaintiff then requested a hearing, and upon de novo consideration of his case the Administrative Law Judge granted Plaintiff's application. (Tr. 16–19). However, upon review, the Appeals Council reversed and denied Plaintiff's application (Tr. 5–12).

An X-ray of Plaintiff's chest taken on February 4, 1971 was interpreted as showing slight medial lung fibrosis with nodular fibrosis, category I–p by a Dr. Brown. (Tr. 65). A subsequent interpretation, apparently of the same X-ray, by a Dr. Moorman was completely negative for pneumoconiosis. (Tr. 71). A pulmonary function study performed by Dr. Brown showed Plaintiff's $FEV_1 = 2.6$ liters and $MVV = 29$ liters per minute (Tr. 66–69). This test was rejected by the Social Security Administration because less than three tests were run; however, the Administration did consider the test as sufficient to establish a minimum $FEV_1$ of 2.6 L. (Tr. 80).

An X-ray of Plaintiff's chest taken on June 22, 1973 was interpreted as completely negative for pneumoconiosis by two Public Health Service doctors (Tr. 82, 83). On August 2, 1973 a Dr. Norman examined Plaintiff at the McAlester Clinic. No cyanosis, dependent edema or cough was evident. There was no dyspena at rest. A pulmonary function study performed at this time showed $FEV_1 = 1.05$ L. and MVV 38 L. min. Dr. Norman stated that Plaintiff clinically did not appear to have the marked degree of pulmonary insufficiency that was indicated by this study. (Tr. 73–79). This

study was also rejected by the Administration on the basis that less than three tests had been run. (Tr. 80).

On January 12, 1974 Plaintiff underwent another pulmonary function study. This test showed $FEV_1 = 1.65$ L. and MVV 47 L.m. (Tr. 85–90). This test was rejected by the Administration because the FEV curves showed characteristics of submaximal effort. (Tr. 105). On October 9, 1974 Plaintiff was examined by Dr. Turner Bynum. (Tr. 96–102). Examination showed a well developed male 62 years of age. Lungs were negative to percussion and auscultation. X-rays showed all indicators within normal limits. $FEV_1 = 2.00$ L. and $MVV = 63$ L/m. Dr. Bynum concluded that these readings showed normal ventilatory capacity considering the guarded cooperation Plaintiff was able to give. These pulmonary function values were rejected by the Administration for the same reasons as the January 17, 1974 study. (Tr. 105).

Plaintiff testified that he worked in coal mining for more than 35 years. (Tr. 34). His work in the mines consisted of hard physical labor. (Tr. 35–36). He is no longer able to do such hard work (Tr. 41). Plaintiff testified that he quit coal mining in 1963 because the mine shut down. (Tr. 35). He applied for coal mine employment in 1968 but was rejected because of his physical condition. (Tr. 42). Plaintiff testified that he has been employed by the Oklahoma Highway Department since 1966. (Tr. 35). This work is of a light nature and requires little exertion. (Tr. 43–45).

Under the interim criteria a miner will be considered totally disabled due to pneumoconiosis if he establishes pneumoconiosis under the provisions of § 428 or meets certain proscribed ventilatory function study values. Under the provisions of § 428 a finding of pneumoconiosis may be based on X-ray, biopsy, or autopsy. Plaintiff's X-rays do not meet the stated criteria and he has not had a biopsy. Therefore Plaintiff fails to qualify under § 428. Plaintiff is 69 inches tall. (Tr. 99). Under § 490 the proscribed ventilatory study values for a person this height are $FEV_1 = 2.4$ L. and

$MVV = 96$ L%6 1m. Both $FEV_1$ and MVV must be under these specified values if a claimant is to qualify under this section. Plaintiff did not meet these values in his February 4, 1971 pulmonary function study as his $FEW_1 = 2.6$ L: in the later two studies of his pulmonary function values were beneath the proscribed values. The Secretary concluded that these tests were unsatisfactory and chose to ignore the scores therein achieved. The question arises whether the Secretary is entitled to disregard the results of these tests. In a statement regarding the evaluation of ventilatory function studies Dr. Harold Passes, who appears to be the Administration's Chief Medical Officer, states that the results of ventilatory function tests are acceptable only where there are three tests with no more than a 2% variation in the results. (Tr. 92). Thus it appears that the Secretary followed its own regulation in this case. Further it seems that the regulation is reasonable. It appears that the ventilatory function studies are based on a claimant's blowing into a tube. Obviously it would be easy for a claimant simply not to blow as hard as he could and thereby achieve a lower value than he is entitled to. The medical analysis stating that Plaintiff's ventilatory function studies are unacceptable (Tr. 105) should be given the weight of expert testimony. This Court cannot say that this report discrediting Plaintiff's ventilatory studies is not such relevant evidence as a reasonable mind might accept as adequate to support the conclusion that said values were obtained in a defective test. Therefore, Plaintiff has failed to qualify under the second alternative of the interim standards.

Plaintiff's next alternative is to qualify under the permanent criteria which are set out in §§ 401 et seq. 414 provides for determining the existence of pneumoconiosis. Three alternatives are provided by the section. The first is to qualify under the provisions of § 428. As has already been seen Plaintiff failed to do this. The second alternative is to establish the existence of a totally disabling chronic respiratory or pulmonary impairment. §§ 412, 422 and 426

are referenced for making this determination. § 412 provides that a miner shall be considered totally disabled due to pneumoconiosis only if his pneumoconiosis prevents him from engaging in work requiring skills comparable to those he used in coal mining and his impairment has or can be expected to last longer than 12 months. § 422 provides that in determining total disability primary consideration is given to the medical severity of a claimant's pneumoconiosis and lesser consideration is given to his age, education and work experience. § 426 provides that a pneumoconiosis that is not listed in this appendix is totally disabling only if because of its severity a miner is not only unable to do his previous coal mine work, but cannot, considering his age, education, and work experience engage in comparable gainful work. Pneumoconiosis must be the primary reason for such disability. § 426(b) provides a table of ventilatory study values for making a determination of totally disabling pneumoconiosis. As Plaintiff has submitted no satisfactory ventilatory function studies, this table is irrelevant herein. § 426(c) provides that if a claimant is unable to produce a ventilatory study, a finding of disability due to pneumoconiosis may be made on the basis of other relevant evidence. § 441(c) also provides that a finding of the existence of pneumoconiosis may be based on other relevant evidence.

It was the decision of the Appeals Council that the evidence failed to establish that Plaintiff was totally disabled due to pneumoconiosis before July 1, 1973. This decision is supported by substantial evidence. The ventilatory studies contained in the record are unacceptable. The balance of the evidence contained in the record does not show total disability due to pneumoconiosis. No X-ray shows the existence of pneumoconiosis. No examining physician diagnosed disabling pneumoconiosis or a totally disabling chronic respiratory or pulmonary impairment presumed to be pneumoconiosis. Plaintiff quit coal mining because the mine shut down and not because of disability. Plaintiff has worked continuously since quitting coal mining although his current employment does not require the skills and abilities which he used in coal mining. Plaintiff testified that he is unable to do work which requires the skills and abilities that he used in coal mining. And he testified that he applied for coal mine employment in 1968 but was turned down because of his physical condition. This testimony of disability is uncorroborated except by the ventilatory studies which were rejected by the Secretary. Plaintiff is now 63 years old and was 56 years old when he was rejected for coal mine employment in 1968. One would expect that a man of his age might not be physically able to do the kind of physical labor which is required in coal mining. Thus it appears probable that Plaintiff's inability to do hard physical labor is due to his age and not pneumoconiosis.

In view of the foregoing the Court concludes that the Secretary's decision is supported by substantial evidence and should be affirmed. A judgment and order based on the foregoing will be entered this date.