**John STUMP, Plaintiff,**

**v.**

**David MATHEWS, Secretary of Health, Education and Welfare, Defendant.**

Civ. A. No. 76–276.

United States District Court, D. Delaware.

Dec. 20, 1977.

---

Gary A. Myers, Community Legal Aid Society, Inc., Dover, Del., for plaintiff.

James W. Garvin, Jr., U. S. Atty., Kent Walker, Asst. U. S. Atty., Wilmington, Del., Stephanie W. Naidoff, and Fred J. Marinucci, Office of the Gen. Counsel, HEW, Philadelphia, Pa. for defendant.

## OPINION

STAPLETON, District Judge:

Plaintiff John Stump has brought this action to review the final determination of the Secretary of Health, Education and Welfare ("the Secretary") that he is not entitled to black lung benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 30 U.S.C. § 901, *et seq.* Jurisdiction is conferred by 30 U.S.C. § 923(b), which incorporates 42 U.S.C. § 405(g).

Plaintiff, a resident of Hartly, Delaware, first applied for black lung benefits on April 23, 1973. After his claim was initially denied by the Department of Health, Education and Welfare on April 11, 1974, and again on reconsideration on June 25, 1974, he requested a hearing. An Administrative Law Judge ("ALJ") conducted a hearing on Stump's claim on December 1, 1975, and rendered his decision denying benefits on February 20, 1976. The Appeals Council affirmed that decision on June 25, 1976. Thereafter, plaintiff sought review in this Court.

Under the substantial evidence test, the role of this Court is to review the record compiled by the Department of Health, Education and Welfare and to determine whether, based on the record as a whole, there is "such relevant evidence as a reasonable mind might accept as adequate to support [the Secretary's] conclusion . . ." *Celebrezze v. Bolas,* 316 F.2d 498, 501 (8th Cir. 1963). The Court is not permitted to conduct a trial *de novo* to reweigh the evidence presented in whatever manner it sees fit.

To be entitled to benefits under the Act, a claimant must show that he is totally disabled due to pneumoconiosis arising out of employment in the Nation's coal mines.[1] A claimant is totally disabled within the meaning of the statute if his pneumoconiosis "prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged. . . ."[2] It is required that medical considerations alone form the basis of a finding of total disability,[3] but for miners who worked for fifteen or more years in the mines, Congress has created certain rebuttable presumptions and other procedural rules to ease the miner's burden of proving total disability.

Not all pneumoconiosis can be detected by x-rays.[4] In recognition of this, Congress passed legislation which prohibits the denial of benefits to long-term miners on the basis of negative x-rays if there is other evidence of a totally disabling respiratory or pulmonary impairment. The statute stresses the importance of relying on other kinds of medical tests in addition to x-rays.[5]

To implement the statutory directives, the Secretary has adopted a rebuttable presumption that a miner who scores within certain ranges on specified ventilatory or pulmonary tests is totally disabled due to pneumoconiosis.[6] A miner who does not meet the tests required to bring him within

1. 30 U.S.C. § 901; 20 C.F.R. § 410.410.

2. 20 C.F.R. § 410.412.

3. 20 C.F.R. § 410.424.

4. 1972 *U.S.Code Cong. & Admin.News,* p. 2305 ff.

5. 30 U.S.C. § 921(c)(4).

6. 20 C.F.R. §§ 410.426(b) and 410.490(b)(1)(ii); Appendix to 20 C.F.R. § 410.

the rebuttable presumption may nevertheless establish entitlement to benefits if any other relevant medical evidence demonstrates "the existence of a totally disabling chronic respiratory or pulmonary impairment" that arises from employment in a coal mine.[7]

Pursuant to 30 U.S.C. § 924, a miner must have filed his claim and met the requirements for benefits before June 30, 1973 in order for the Secretary to be responsible for payment of black lung benefits. The Secretary does not have jurisdiction to pay benefits or order such payments for disabilities incurred subsequent to that date. In 1972, Congress shifted that jurisdiction to the Department of Labor. Even if a claimant can show disability due to pneumoconiosis due to work in underground mines, if the disability did not occur until after June 30, 1973, he has no claim against the Secretary.

## THE EVIDENCE

The record shows that the claimant, who was sixty-six years old at the time of the disability hearing, left school at the age of sixteen. In 1926, he began working in underground coal mines, and continued doing so for various coal companies with only short interruptions until 1959. After 1959, Stump was self-employed as a painter.

The medical evidence before the ALJ included three chest x-rays, none of which indicated pneumoconiosis. The ALJ also considered two pulmonary function studies performed on the plaintiff, one by Dr. Caleb Layton dated June 7, 1973, the other by Dr. W. J. Boyd dated September 24, 1974. Dr. Boyd also performed a blood gas study, the results of which were before the ALJ. The ALJ considered a May 9, 1974 medical report from Dr. Joel Temple. Finally, the ALJ considered the claimant's own testimony.

Based upon the evidence which he considered, the ALJ found that the claimant did not suffer from simple or complicated pneumoconiosis. He also found that the

claimant did not suffer from a chronic pulmonary or respiratory impairment presumed to be pneumoconiosis. Finally he found that the claimant was not totally disabled due to pneumoconiosis arising from coal mine employment. Based upon these findings, the ALJ denied the claimant black lung benefits.

## PLAINTIFF'S CLAIMS

Stump's appeal is based upon two grounds. First he claims that the ALJ's findings based upon the two pulmonary function tests were not supported by substantial evidence. Second, he claims that the ALJ ignored the blood gas study by Dr. Boyd, the results of which create a presumption of disabling pneumoconiosis under the statute and regulations.

1. *The Pulmonary Function Tests.*

The two pulmonary function tests were performed by Dr. Caleb Layton on June 7, 1973, and by Dr. William Boyd on September 24, 1974. The first test showed an FEV of 2.419 L. and an MVV of 120 L./min. The second test showed an $FEV_1$ of of 2.29 L. and an MVV of 86 L./min. Under the tables in 20 C.F.R. § 410.490(b)(1)(ii), taking into account the plaintiff's height, in order to establish a presumption of total disability due to pneumoconiosis, his values would have to be less than or equal to an $FEV_1$ of 2.4 and an MVV of 96 L./min. Based upon that table, the test performed on June 7, 1973 did not yield results low enough to establish that presumption, though the September 24, 1974 results were sufficiently low to create the presumption.

The ALJ dealt with the conflicting pulmonary function tests results by having Dr. H. David Kerr of the Bureau of Hearings and Appeals Advisory Staff review the two results. Dr. Kerr found the June 7, 1973 test to be satisfactory and the September 24, 1974 test to be unsatisfactory due to suboptimal and inconsistent effort by Mr. Stump. The ALJ relied upon Dr. Kerr's report and also the fact that the second test

7. 20 C.F.R. § 410.414(c).

was performed after the June 30, 1973 jurisdictional cut-off in concluding that a presumption of disabling pneumoconiosis has not been established pursuant to 20 C.F.R. § 410.490(b)(1)(ii).

The claimant challenges the ALJ's reliance upon Dr. Kerr's report. Dr. Kerr reviewed both of the pulmonary function test results. As noted above, Dr. Layton's report of June 7, 1973 showed an $FEV_1$ of 2.419 L. and an MVV of 120 L./min. Upon reviewing the respirometer chart paper submitted by Dr. Layton, Dr. Kerr found the $FEV_1$ to be 2.6 L. and the MVV to be 130 L./min. Dr. Kerr also stated that Dr. Boyd's test of September 24, 1974 was unsatisfactory because of "suboptimal and inconsistent effort" on the claimant's part.

The claimant's objections to the ALJ's reliance upon Dr. Kerr's report are that Dr. Kerr was not subject to cross-examination on the content of his report, and that by relying upon the report, the ALJ did not articulate his reasons for rejecting the second pulmonary function test. The claimant also contends that the ALJ wrongly rejected the September 24, 1974 test results because the jurisdictional cut-off date of June 30, 1973 had passed.

■ It is true that post-June 30, 1973 test results do have probative value for a finding of previously existing disability. *See Talley v. Mathews,* 550 F.2d 911 (4th Cir. 1977); *Begley v. Mathews,* 544 F.2d 1345 (6th Cir. 1976), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977); *Ingram v. Califano,* 547 F.2d 904 (5th Cir. 1977). However, from the record, I cannot conclude that the ALJ excluded the September 24, 1974 test results from consideration solely because of the date. He did consider the date of the test, but only for the purpose of comparing the results to those of the June 7, 1973 test, which was before and much closer to the jurisdictional cut-off date. The ALJ considered the September 24, 1974 test result but decided that, based on the conflicting evidence and Dr. Kerr's report, it did not establish the presumption of disability due to pneumoconiosis.

In reaching his conclusion, it is apparent from the record that the ALJ weighed Dr. Kerr's report very heavily. The question, therefore, arises whether such a report of a non-examining, non-testifying doctor can be utilized by the ALJ, in order to reject the conclusions of an examining physician.

In *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the Supreme Court found that properly authenticated medical reports of treating physicians may be admitted into evidence by an ALJ and constitute substantial evidence to support the ALJ's conclusions. However, it is unclear whether a similar rule applies to reports by non-examining, non-testifying doctors. I need not decide the broad issue because in this case I find that due to the nature of Dr. Kerr's report, it cannot be used as a basis for rejecting the examining physician's report.

■ Dr. Kerr's report stated that the June 7, 1973 test was satisfactory, although he arrived at different $FEV_1$ and MVV values that Dr. Layton had. He also concluded that the September 24, 1974 test was unsatisfactory due to "suboptimal and inconsistent effort" by Mr. Stump. Finally, he found no need for new tests. But Dr. Kerr made no attempt to explain the basis for his conclusion that the effort found satisfactory[8] by the physician administering the test was "suboptimal and inconsistent". I hold that when a non-examining, non-testifying doctor reviews medical reports of examining doctors and reaches different conclusions from those doctors without giving any explanation of how he reached his conclusions, his report cannot alone be used to reject the examining doctor's conclusions. In order for a report to be given the weight which the ALJ here gave it, there must be reasons given which justify its conclusions, so that the parties have the opportunity to present evidence which can rebut those reasons, and in order that the reviewing court will be able to deal adequately with the report.

8. In his report, Dr. Boyd said that the claimant's cooperation was "good".

In *Bryington v. Mathews*, 420 F.Supp. 539 (W.D.Va.1976), another black lung case, the plaintiff submitted two pulmonary function studies. In each of those studies, the examining physician had found the claimant's cooperation to be fair or his effort satisfactory. However, Dr. Kerr examined the two tests and dismissed them as unsatisfactory. I agree with Judge Turk's conclusions concerning reliance upon Dr. Kerr's report:

Obviously, the administering doctor or technician is best placed to comment on the validity of the testing, based on the patient's cooperation and comprehension . . . Since Dr. Kerr's statement was based neither on a stated medical premise or the regulatory standards of 20 C.F.R. § 410.430, the court must conclude that the Secretary's disregard of the ventilatory studies is not supported by "substantial evidence". (Citation omitted) (420 F.Supp. at 541)

In *Kulhavick v. Mathews*, 428 F.Supp. 748 (E.D.Pa.1976), also a black lung case, the ALJ admitted reports of rereadings of x-rays of radiologists who had not examined the claimant. The court could not find that these reports constituted substantial evidence. The court stated, at 428 F.Supp. at 749:

Here, counsel has raised the further question whether a form report, containing no narrative information or explanation, where certain blocks or blank spaces only are checked, may be relied upon and afford the basis for decision as against the testimony and/or reports of examining physicians. In the preparation of a decision counsel is entitled to some explanation for the ALJ's decision. Moreover, the Court is entitled to be informed as to the reasoning and basis for the ruling in determining whether the report of such a non-examining, non-appearing physician

constitutes "substantial evidence" supporting the ALJ's decision.

*See also Felthager v. Weinberger*, 529 F.2d 130, 133 (10th Cir. 1976).

There is a line of cases holding that the ALJ may consider rereadings of x-rays and that these rereadings constitute substantial evidence. *Harness v. Weinberger*, 401 F.Supp. 9 (E.D.Tenn.1975); *Campbell v. Weinberger*, 402 F.Supp. 1147 (N.D.W.Va. 1975); *Welsh v. Weinberger*, 407 F.Supp. 1043 (D.Md.1975). However, these cases do not indicate that the doctors doing the rereading made conclusions without giving reasons. In *Doctorman v. Weinberger*, 417 F.Supp. 26 (E.D.Okl.1976), the court found that reviews of ventilatory studies which found the ventilatory function tests unacceptable constituted substantial evidence. However, in that case, it appears that the reviewing doctor found the ventilatory studies unacceptable because the regulations mandated such a result under the circumstances.[9] In short, in *Doctorman*, the reviewing doctor provided reasons for rejecting the ventilatory function tests.

Finally, in *Ward v. Mathews*, 403 F.Supp. 95 (E.D.Tenn.1975), the court held that the claimant had no right to object to the admissibility of rereadings of x-rays, on the basis of lack of the right to cross-examine the non-testifying doctor who did the rereadings, where she did not attempt to subpoena the doctor. However, in this case, the claimant had no opportunity to subpoena Dr. Kerr. Although the claimant attempted to find out what was in the record prior to the date of the hearing, his requests were ignored. The claimant did not, and could not, know of the existence of Dr. Kerr's report until the time of the hearing, when it was too late to subpoena him.[10]

9. The regulation to which the *Doctorman* court refers requires that the examining doctor perform at least three ventilatory function tests, with no more than a 2% variation. The existence or relevance of such a regulation has not been brought to the attention of this Court in Dr. Kerr's report, the ALJ's decision, in the briefs or at oral argument. I, therefore, assume that it has no relevance here.

10. Under 20 C.F.R. § 410.639, subpoenas may be issued by the ALJ "when reasonably necessary for the full presentation of a case." Parties who want subpoenas issued by the ALJ must file a written request with the ALJ five days prior to the time fixed for hearing.

In short, none of the cases cited by the Secretary are relevant to the circumstances of this case. When a non-examining, non-testifying doctor reviews medical reports of the examining doctors and rejects their conclusions without giving reasons, the report of that doctor alone cannot be utilized to reject the report of the examining doctor. The claimant is entitled to have the opportunity to rebut that doctor's report, and the reviewing court is entitled to know the reasons underlying the conclusions so that it can fulfill its statutory duty of deciding whether there is substantial evidence to support the Secretary's decision.

■ On the record before me, I cannot find that the ALJ's decision, relying as it does on Dr. Kerr's report, is supported by substantial evidence. The case must be remanded so that the ALJ can make findings and reach conclusions concerning the pulmonary function tests and the presumption of 20 C.F.R. § 410.490(b)(1)(ii) without the aid of Dr. Kerr's report, as it currently stands, or after the record has been reopened so that Dr. Kerr can explain his conclusions, and Mr. Stump can have the opportunity to challenge his explanation.

## 2. *The Blood Gas Study.*

On September 24, 1974, Dr. Boyd performed a blood gas study on the claimant. His observed values were a $pO_2$ of 60 mm Hg and a $pCO_2$ of 34 mm Hg. The ALJ did not mention these results in his decision and there is no indication that he considered them, although Dr. Boyd's report was in evidence before him.

Under the statute and regulations, a rebuttable presumption of total disability due to pneumoconiosis may be established in the absence of positive x-rays or pulmonary function tests if the miner has a work experience of fifteen or more years in underground mines and the evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment. The Secretary may then rebut such a presumption by establishing either that the impairment is not pneumoconiosis or that it did not arise from employment in the mines.

30 U.S.C. § 921(c)(4) provides:

. . . if the miner was employed for fifteen years or more in one or more underground coal mines . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis. . . . The Secretary may rebut such presumption only by establishing that (A) such miner does not . . have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

20 C.F.R. § 410.414(b) provides:

(1) . . . if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment . . ., it may be presumed, in the absence of evidence to the contrary . . ., that a miner is totally disabled due to pneumoconiosis. . . . (2) This presumption may be rebutted only if it is established that the miner does not . . . have pneumoconiosis, or that his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine. (3) The provisions of this paragraph shall apply where a miner was employed for 15 or more years in one or more of the Nation's underground coal mines; . . .

In the Appendix to the Regulations, it is stated that:

A miner with pneumoconiosis who meets or met one of the following sets of medical specifications, may be found to be totally disabled due to pneumoconiosis at the pertinent time, in the absence of evidence rebutting such finding:

(1) Arterial oxygen tension at rest . . . or during exercise and simultaneously determined arterial $pCO_2$ equal

to, or less than, the values specified in the following table:

| Arterial $pCO_2$ (mm. Hg) | and | Arterial $pO_2$ equal to or less than (mm. Hg) |
|---|---|---|
| * | * | * |
| 34 | | 61 |
| 35 | | 60 |
| * | * | * |

Pursuant to Section 921(c)(4) and the series of regulations cited, in order for the claimant to establish the rebuttable presumption, he must show: (1) that he worked in the mines for more than fifteen years, (2) that he had a chronic respiratory or pulmonary impairment, and (3) that his blood gas test results met the values listed in the Appendix to the Regulations. This was the conclusion reached with an analogous set of facts in *Brunelli v. Mathews*, 424 F.Supp. 622 (D.Colo.1976). There, the court explained the interplay of the various regulations,[11] at 424 F.Supp. at 624:

> Plaintiff's blood-gas studies give rise to a presumption, assuming the existence of pneumoconiosis, that such pneumoconiosis is of a totally disabling nature. Part 410, Subpart D Appendix; § 410.424. Plaintiff's other evidence, indicating the existence of a chronic respiratory or pulmonary impairment, presumes the presence of pneumoconiosis in a miner having had fifteen years of mine employment. § 410.414(b)(1). Taken together, Subpart D Appendix and § 410.414 give rise to a rebuttable presumption that Mr. Brunelli suffers total disablement due to pneumoconiosis. The presumption can be rebutted only upon a showing by the Secretary that (1) the miner does not have pneumoconiosis; or, (2) his respiratory or pulmonary impairment is not mine related. § 410.414(b)(2).

In this case the ALJ did not consider the effect of the Section 921(c)(4) presumption, nor did he mention the blood gas study which was in evidence. This was error which must be corrected upon remand.

11. The Secretary does not challenge the *Brunelli* court's construction of the regulations.

There are not sufficient findings of fact in the ALJ's decision for this Court to conclude that the Section 921(c)(4) presumption either has or has not been established.

There is no question that the claimant meets the fifteen year requirement. Although the ALJ did not deem it necessary to make such a finding, the Secretary does not contest this point.

There is also evidence in the record that the claimant suffered from a chronic respiratory or pulmonary impairment. After a June 7, 1973 radiological examination, Dr. Theophane Loughery found that the claimant was probably suffering from early pulmonary emphysema. In his medical report of May 9, 1974, Dr. Joel Temple stated that the claimant had a chronic productive cough producing black sputum, and crackling rales in the lungs. He diagnosed dyspnea, a disease involving shortness of breath. Dr. Temple's impression was:

> Chronic obstructive lung disease.
> Coalworkers pneumoconiosis suspected.

Dr. Boyd stated that the claimant had a slight obstructive impairment and that his pulmonary function values qualified him as having a chronic respiratory or pulmonary disease. In addition, the claimant testified that he had been wheezing, coughing, producing sputum and was short of breath. In short, there is substantial evidence in the record to support a finding that the claimant suffered from a chronic respiratory or pulmonary disease. However, the ALJ made no finding on the matter.[12]

It is clear that the results of the blood gas study performed by Dr. Boyd fall within the values on the table in the Appendix to the regulations. The Secretary argues, however, that since the blood gas study was done in September of 1974, after the jurisdictional cut-off date, the test results lack probative value. As noted in the discussion of the pulmonary function test, this is an incorrect statement of the law. *See also Collins v. Weinberger*, 401 F.Supp. 377 (W.D.Va.1975), *aff'd sub nom. Talley v.*

12. The ALJ found only that the claimant suffered from no chronic pulmonary or respiratory impairment which arose out of coal mine employment or was totally disabling.

*Mathews, supra; Brunelli, supra.* Subsequent medical evidence may be probative of pre-existing conditions. On remand, if the ALJ finds a chronic pulmonary or respiratory impairment, he will have to make the necessary finding as to whether the blood gas study creates a presumption of total disability as of June 30, 1973.

If, on remand, the ALJ finds that the claimant suffers from a chronic pulmonary or respiratory impairment and that the blood gas study in evidence presumes total disability as of June 30, 1973, "there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis." 30 U.S.C. § 921(c)(4). At that point, the ALJ will have to make the necessary findings as to whether the presumption has been rebutted by the Secretary.

The case will be remanded [13] for the ALJ to make findings of fact as to whether the Section 921(c)(4) presumption has been established. If it has been established, the ALJ will have to make findings on the question of whether that presumption has been rebutted.[14] Although the Secretary argues that there is substantial evidence in the record to rebut the presumption of disability and to rebut the presumption of pneumoconiosis, it is not the role of this Court to weigh that evidence in the first instance. The case will be remanded to the ALJ for further findings.

---

13. The claimant argues that the decision should be reversed rather than remanded under *Brunelli*. In *Brunelli*, the court found that the Section 921(c)(4) presumption had been met and that the Secretary had not produced evidence to rebut the presumption of pneumoconiosis of a totally disabling nature. Therefore, there was no reason to remand. In this case, I cannot find that the Section 921(c)(4) presumption has been met or that there is no evidence in the record to rebut the presumption of totally disabling pneumoconiosis. Therefore, this is a proper case for remand.

14. The Section 921(c)(4) presumption cannot be rebutted by the existence of negative x-rays or negative pulmonary function tests. 30 U.S.C. § 923(b); 20 C.F.R. § 410.414(c), § 410.-490(a); *Brunelli, supra.*